**HALLA NURSERY, INC.,
et al., Respondents,**

v.

**CITY OF CHANHASSEN, Appellant.**

No. A08–0233.

Court of Appeals of Minnesota.

March 24, 2009.

Phillip R. Krass, Benjamin J. Court, Krass Monroe, Minneapolis, MN, for respondents.

Thomas M. Scott, Campbell Knutson, P.A., Eagan, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; WORKE, Judge; and CONNOLLY, Judge.

## OPINION

WORKE, Judge.

In this dispute involving whether a sign complies with a prior stipulation and judgment (judgment) and relevant city ordinances, appellant-city argues that (1) its failure to enforce the judgment does not prevent it from now doing so; (2) the district court's findings do not support the conclusion that the sign faces are in substantial compliance with the judgment; and (3) the district court erred in determining that respondent-nursery established a vested right to maintain the sign. Respondents filed a notice of review and argue that the district court erred (1) in concluding that the sign does not comply with the judgment because of an exception allowing respondents to construct any sign for which they received a permit to build and operate and (2) in enjoining respondents from using the sign consistent with its intended use and as authorized by permit. Because respondents were aware that the sign they sought to build and maintain violated the judgment, they did not acquire vested rights. We reverse.

## FACTS

Respondents Donald E. Halla and Sandra Cwayna Halla own real property that they lease to respondent Halla Nursery, Inc. In 1994, respondents constructed a retail sales building without obtaining a permit. Appellant City of Chanhassen inspected the building and determined that it did not comply with building-code requirements. In June 1994, appellant sought to enjoin respondents from operating their business in the new building. On February 10, 1997, the parties entered into a stipulation for entry of judgment. The judgment addresses signage and provides:

**A. Permitted Signage.** The following signs are allowed:

1. Existing sign on the roof of the Garden Center.

2. Existing sign at the entrance to the Subject Property from Highway 101, or an updated pylon sign of the same height and square footage.

3. One off premises directional sign may be placed in the southeast quadrant of the intersection of Highway 101 and Pioneer on Lot 2, Block 1, Halla Great Plains Addition. The sign content shall be as approved by City Staff in the sign permit. The sign may not exceed eight (8) feet in height and seventy-two (72) square feet in size per sign face. The sign may have two sides back-to-back or 'V' shaped. The sign shall not be lit. Before erecting the sign, a sign permit must be obtained from the City. The sign must be removed when the lot on which it is located is sold.

. . . .

C. **Prohibited Signage.** All signs are strictly prohibited, except as expressly allowed pursuant to paragraphs 6A and 6B of this Stipulation, or pursuant to a sign permit issued by the City.

The judgment also provides that any "action or inaction of [appellant] shall not constitute a waiver or amendment" to the judgment, and "amendments or waivers shall be in writing, signed by the parties and approved by written resolution of the City Council" in order to be binding. Further, appellant's "failure to promptly take legal action to enforce [the judgment] shall not be a waiver or release."

Following the entry of judgment, respondents were issued a permit for a sign. The approved sign faces were eight feet in height and 72 square feet in total area. Shortly after the sign was erected, Chan-

hassen Community Development Director, Kate Aanenson, observed that the sign faces were illuminated in violation of the judgment. Aanenson contacted respondents regarding illumination of the sign. The conversation became confrontational, and the issue remained unresolved. Respondents maintained the illumination on the sign. Appellant did not take any action against respondents, choosing instead to wait, assuming that the property would soon be sold and the sign torn down. The sign, however, remained standing and unchanged until 2005.

On March 28, 2005, appellant received a new sign-permit application from respondents. The application indicated that respondents were planning on erecting an illuminated monument sign that would be approximately 9 feet tall with a total area of 102 square feet. The application also indicated that the sign would have an "electric message center." On April 11, 2005, appellant approved the sign permit. The permit was issued by Josh Metzer, a Chanhassen city planner, who was not aware of the judgment.

In 2006, construction on the sign commenced. In March, Metzer posted a stop-work order because the sign footings did not meet setback requirements. New footings were approved, and construction continued. By late April, construction was nearly completed. Metzer visited the site and posted another stop-work order because a conditional use permit (CUP) is required for an electronic-reader board. Metzer also measured the sign and found that the electronic-reader boards measured 73.75 square feet and each sign face totaled 120 square feet in total area. Metzer also measured the old sign faces, which measured 72 square feet as the judgment permitted; thus, the new sign was too large.

In June 2006, respondents filed a complaint against appellant seeking injunctive relief, declaratory judgment, and a writ of mandamus to prohibit appellant from interfering with the use of the sign. Appellant filed a counterclaim, alleging that the sign violated the judgment and city zoning ordinances. Appellant claimed that the sign was too large, impermissibly contained an electronic-message center, and violated the judgment's prohibition of illumination. Following a hearing, the district court concluded that the judgment is valid and enforceable and that the sign did not comply with the judgment—it is too large, illuminated, and has 73.75 square-foot electronic-message centers. The district court also concluded that the sign violates the city code because it is (1) an off-premises sign generally advertising the business; (2) too large for agricultural zoning; and (3) a moving and flashing sign not approved by a CUP. The district court further concluded that although respondents obtained a permit, the judgment required written approval of any amendments. The district court denied respondents' request for injunctive relief and for a writ of mandamus. The district court ruled that appellant was not estopped from enforcing the judgment and that respondents did not have vested rights. The district court ordered respondents to remove the electronic-message-center components and to bring the sign into compliance with the judgment.

In August 2007, respondents moved for amended findings. In December, the district court issued amended findings of fact, conclusions of law, and order for judgment. The district court amended the findings to include: (1) "[t]he sign constructed in 1997 remained illuminated until it was torn down in 2005"; (2) "[respondents did not obtain an amendment] in writing signed by the parties and approved by the City Council by written resolution"; and (3)

"[respondents] testified that, at the time of the second work order, the final electrical connections were being made to put the sign into operation." The district court deleted the finding that: "The sign does not comply with the plans approved by [appellant]." The district court added the following:

33. At the time of the issuance of the sign permit for the 2005 sign, [appellant] had adopted certain ordinances relating to the construction of signs within the City, including in the relevant parts:

SEC. 20-1259. PROHIBITED SIGNS. The following signs are prohibited:

(2) Motion signs and flashing signs, except time and temperature signs and barber poles which may be permitted by conditional use permits (see sections 20-231 through 20-237).

SEC. 20-1265. GENERAL LOCATION RESTRICTIONS.

(e) Illuminated signs shall be shielded to prevent lights from being directed at oncoming traffic both in brilliance that it impairs the vision of the driver.... Illumination for a sign or groups of signs shall not exceed one-half foot candle in brightness as measured at the property line.

34. The Court was provided with a video tape of the 2005 sign when it was in operation. The sign, when in message board mode, changes to a new message approximately every six seconds. As it is along a county road which otherwise does not have commercial signage, the brilliance and changing messages could be distracting to traffic and an annoyance to residences that have a view of the sign.

The district court deleted the conclusion that: "The two sign faces each exceed the allowed 72 square feet of area. The sign is not only illuminated, but also has two, 73.75 square foot electronic message centers, one on each sign face." The district court substituted the following: "The two sign faces, each 73.75 square feet, are in substantial compliance with the [judgment] which allowed 72 square feet of area. However, there is a separate 18″ by 12.5′ illuminated cabinet, the sign is illuminated [and] has electronic message centers." The district court added the conclusions: (1) "[appellant] allowed [respondents] to operate an illuminated sign for the 8 years prior to the construction of the current sign"; (2) "[e]xcept for the 1997 prohibition of an illuminated sign, the existing sign can be operated in [a] manner which is in substantial compliance with the [judgment] and the City Code existing in 2005"; (3) "[t]o operate the 2005 sign in a message center mode would be clearly illegal under the City Code existing in 2005"; (4) "[respondents] did acquire vested rights in the construction of the 2005 sign in that substantially all work ha[s] been completed on the sign"; and (5) "[respondents] are entitled to the use of the sign in a manner most consistent with [ ] the pattern of prior use of an illuminated sign, [ ] the [judgment], and [ ] the City Code in existence in 2005."

The district court granted, in part, respondents' request for a writ of mandamus and issued judgment in favor of appellant on its counterclaim for injunctive relief enforcing the provisions of the judgment, subject to limitations. The district court ordered that respondents be granted a permit for the operation of the sign subject to the following restrictions: (1) the lower illuminated cabinet shall not be illuminated; (2) the sign shall operate as a direction sign; (3) the contents of the sign message shall not change more than once a month; (4) the brilliance of the sign shall not impair the vision of drivers; and (5) the illumination shall not exceed one-half foot candle in brightness as measured at the property line. This appeal follows.

## ISSUES

I. Did the district court err in concluding that appellant's inaction prevented it from enforcing the judgment?

II. Did the district court err in concluding that the sign does not comply with the judgment?

III. Do the district court's findings of fact support its conclusion that the sign faces are in substantial compliance with the judgment?

IV. Did the district court err in concluding that respondents acquired vested rights?

V. Did the district court err in enjoining respondents from using the sign consistent with its intended use and as authorized by permit?

## ANALYSIS

**Did the district court err in concluding that appellant's inaction prevented it from enforcing the judgment?**

■ Appellant argues that the district court erred in concluding that its inaction in enforcing the judgment now prohibits it from doing so. The district court concluded that the judgment is valid and enforceable. The judgment provides that any inaction by appellant does not constitute a waiver or amendment to the judgment, and in order to be binding, a waiver or amendment must be in writing and signed by the City Council. There is nothing in the record regarding a signed written waiver or amendment. The judgment prohibits an illuminated sign. Therefore, the district court's conclusions that "[appellant] allowed [respondents] to operate an illuminated sign for the 8 years prior to the construction of the current sign" and that respondents "are entitled to the use of the sign in a manner most consistent with [ ] the pattern of prior use of an illuminated sign" are not supported by the record or the district court's findings. Thus, the district court erred.[1]

**Did the district court err in concluding that the sign does not comply with the judgment?**

■ Respondents argue that the district court erred in concluding that the sign does not comply with the judgment because of an exception that allows respondents to construct any sign for which they have a permit. The judgment strictly prohibits signs, "except as expressly allowed pursuant to paragraphs 6A and 6B ... or pursuant to a sign permit issued by [appellant]." Respondents contend that the language "or pursuant to a sign permit issued by [appellant]" means that they are allowed to construct any sign they wish as long as they have a permit. But paragraphs 6A and 6B are specific about the kinds of signs expressly allowed, including "[o]ne off premises directional sign," which is the sign at issue here. Because the judgment allows for only *one* off-premises sign, respondents' argument that they are permitted to construct any sign they wish as long as they first obtain a permit fails. The permit reference in paragraph 6C applies only to other signage at respondents' retail location. Therefore, the district court did not err in concluding that the sign does not comport with the judgment.

**Do the district court's findings of fact support its conclusion that the sign faces are in substantial compliance with the judgment?**

■ Appellant argues that the district court's findings do not support the conclu-

---

1. Our ruling that the judgment is enforceable is based solely on the terms of the judgment. The parties did not address, and hence we do not comment on, the question of stopping appellant from exercising its zoning powers, under *Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980) and related authorities.

sion that the sign faces are in substantial compliance with the judgment. Appellant contends that conclusion of law 2 is not supported by the district court's findings. Whether the district court's findings of fact support its conclusions of law and judgment is a question of law. *Ebenhoh v. Hodgman*, 642 N.W.2d 104, 108 (Minn. App.2002). "An appellate court is not bound by, and need not give deference to, the district court's decision on a question of law." *Bondy v. Allen*, 635 N.W.2d 244, 249 (Minn.App.2001) (citing *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984)).

The district court found that:

> Metzer subsequently measured the new sign. Each sign face totaled approximately 120 square feet in surface area, which includes the 73.75 square foot electronic reader boards and the addition of an 18″ × 12′5″ illuminated cabinet along the bottom (showing an arrow and '1/4 mile south' language) which was not shown on the plans submitted with the application and approved by [appellant]. Metzer also measured the old sign faces which were still at the site. They measured 6 feet high and 12 feet wide or 72 square feet as allowed by the [judgment].[2]

In its original order, the district court concluded that:

> The sign does not comply with the [judgment]. The two sign faces each exceed the allowed 72 square feet of area. The sign is not only illuminated, but also has two, 73.75 square foot electronic message centers, one on each sign face. It is a general advertising sign, not a directional sign.

The district court amended this conclusion to the following:

> The sign does not comply with the [judgment]. The two sign faces, *each 73.75 square feet, are in substantial compliance with the [judgment] which allowed 72 square feet of area. However, there is a separate 18″ by 12.5′ illuminated cabinet, the sign is illuminated, has electronic message centers* and is a general advertising sign, not a directional sign.

The district court concluded that the judgment is valid and enforceable. The judgment provides that the "sign may not exceed eight (8) feet in height and seventy-two (72) square feet in size per sign face." Because the judgment is valid and enforceable and provides that the sign may not exceed 72 square feet in size per sign face, the sign must not exceed 72 square feet in size per sign face. The district court's finding that each sign face totaled approximately 120 square feet in surface area is supported by the record. But the district court's amended conclusion that the 73.75 square-feet sign faces are in substantial compliance with the judgment is not supported by the court's findings. The district court provides no basis for excluding the non-illuminated portion of the sign faces from the size calculation. The district court erred in concluding that the sign faces are in substantial compliance with the judgment.

**Did the district court err in concluding that respondents acquired vested rights?**

■ Appellant also argues that the district court erred in determining that respondents acquired vested rights because substantially all work had been completed on the sign. In a vested-rights analysis, courts ask whether a developer has progressed sufficiently with construction or otherwise to acquire a vested right

---

2. In addition to the electronic reader board and the illuminated cabinet, the sign face area includes an area above the reader board that advertises the nursery and garden center.

in completing the project under the prior land-use regulations. *Yeh v. County of Cass,* 696 N.W.2d 115, 131–32 (Minn.App. 2005), *review denied* (Minn. Aug. 16, 2005). The vested-rights doctrine exists to protect landowners from unfair changes in zoning laws targeted at stopping partially completed development. *Id.* at 132; *see also Naegele Outdoor Adver. Co. of Minneapolis v. City of Lakeville,* 532 N.W.2d 249, 254 (Minn.App.1995) (holding that when the applicant did not submit permit application until four years after the ordinance in question was amended it had no vested rights), *review denied* (Minn. July 20, 1995).

The district court initially concluded that respondents did not obtain vested rights. The district court stated: "[Respondents are] not able to rely on vested rights.... [T]he sign proposed in the sign permit application clearly violated the terms of the [judgment] and [respondents] could not rely upon the permit approval or the significant progress on the construction of the sign." In its amended order, the district court concluded that respondents *did* acquire vested rights because "substantially all work had been completed on the sign." The district court stated that it reversed its decision, "but only so far as to allow [respondents] the use of the sign under limitations which prevent the substantial violation of the prior history of use, the [judgment] and the zoning ordinance in effect in 2005." The court explained that it reversed its decision because respondents "so substantially completed the financial investment and the physical construction ... to obtain vested rights."

▮ The vested-rights doctrine protects developers from changes in zoning laws. *See Yeh,* 696 N.W.2d at 132. Appellant did not change zoning laws after the permit was issued to make the sign illegal.

The sign was always in violation of the judgment, and it does not comport with the 2005 zoning laws. Further, "[a] property owner is charged with knowledge of whether a local zoning ordinance permits construction undertaken on the property." *Stotts v. Wright County,* 478 N.W.2d 802, 805 (Minn.App.1991), *review denied* (Minn. Feb. 11, 1992). The record established that respondents were aware of the judgment and were aware that they were violating the judgment with their first sign. The permit was erroneously issued, but respondents knew that they were requesting a permit for something that the judgment prohibited and respondents are held accountable for attempting to purposely violate the judgment. We conclude that the district court erroneously applied the doctrine of vested rights.

**Did the district court err in enjoining respondents from using the sign consistent with its intended use and as authorized by permit?**

Finally, respondents argue that the district court erred in enjoining them from using the sign consistent with its intended use as authorized by permit. The district court ordered that respondents be granted a permit for the sign, but that respondents' construction and use of the sign was limited. Respondents contend that because the district court applied the vested-rights doctrine or because the district court erroneously concluded that the sign violated the city code, appellant should be enjoined from interfering with the use of the sign.

Because we concluded that respondents do not have vested rights, they cannot argue that appellant should be enjoined from interfering with their use of the sign. Respondents also contend that the sign does not violate the city code, thus, they should be permitted to use the sign as

constructed. The district court found that the property upon which the sign is located is zoned agricultural and included in the city's comprehensive plan for residential use. The district court also found that the sign is located in an area where it currently can be seen from single-family homes. The ordinances in effect when the permit was issued in 2005 prohibit motion signs and flashing signs and provide that illuminated signs shall be shielded to prevent lights from being directed at oncoming traffic. Chanhassen, Minn., City Code §§ 20–1259(2), 20–1265(e) (2005). The district court found that "[t]he sign, when in message board mode, changes to a new message approximately every six seconds. As it is along a county road which otherwise does not have commercial signage, the brilliance and changing messages could be distracting to traffic and an annoyance to residences that have a view of the sign." The district court concluded that "[t]o operate the 2005 sign in a message center mode would be clearly illegal under the City Code existing in 2005."

Respondents argue that the sign does not violate the zoning prohibition against "motion signs and flashing signs" because "[o]ff-premises signs such as respondents' new sign are plainly not on the list." But respondents provide nothing to counter the district court's finding that "when in message board mode, [the sign] changes to a new message approximately every six seconds" and that the sign violates the city code because it is a "moving and flashing sign not approved by conditional use permit." Respondents seem to argue that because they were issued a permit, they should be allowed to operate the sign; but the permit was erroneously issued, and the record demonstrates that the sign is a "moving and flashing sign" that violates the city code. The district court did not err in concluding that if respondents were permitted to construct and use the sign,

certain limitations would apply. We conclude that respondents must construct a sign that complies with the judgment and relevant city ordinances or remove a sign that does not so comply, and reverse the district court's order to the extent that it contradicts this conclusion.

## DECISION

Because respondents were aware of the judgment that prohibited the construction of the sign respondents began constructing, the district court erred in concluding that respondents acquired vested rights in the sign after it was substantially completed.

**Reversed.**