**HALLA NURSERY, INC.,
et al., Appellants,**

v.

**CITY OF CHANHASSEN, Respondent.**

**No. A08–233.**

Supreme Court of Minnesota.

May 6, 2010.

Phillip R. Krass, Benjamin J. Court, Krass Monroe, P.A., Minneapolis, MN, for appellants.

Thomas M. Scott, Campbell Knutson, Professional Association, Eagan, MN, for respondent.

## OPINION

MEYER, Justice.

Appellants Donald and Sandra Halla own real property in the City of Chanhassen that they lease to appellant Halla Nursery, Inc. (collectively "Halla"). At issue is the interpretation of a 1997 stipulation and judgment between Halla and respondent City of Chanhassen concerning an illuminated sign at Halla's nursery and the application of the vested rights doc-

trine. The district court allowed Halla to continue using the illuminated sign, concluding that Halla had obtained vested rights to use the sign. The court of appeals reversed. The court concluded that the sign did not comply with the terms of the 1997 stipulation and judgment. The court also held that Halla did not have vested rights to use the sign because Halla was aware that construction of an illuminated sign was prohibited by the 1997 stipulation and judgment and relevant city ordinances. We affirm the court of appeals.

In 1994, Halla constructed a retail sales building without obtaining a building permit on property located at the intersection of Highway 101 and Pioneer Trail in Chanhassen, Minnesota. The City inspected the building and determined that it did not comply with building code requirements. The City sought to enjoin Halla from operating a business in the new building.

On February 10, 1997, the parties entered into a stipulation for entry of judgment to resolve the dispute over the building. The stipulation and judgment addressed signage, which is at issue here. Paragraph 6A of the stipulation and judgment provides that the following signs are allowed:

1. Existing sign on the roof of the Garden Center.

2. Existing sign at the entrance to the Subject Property from Highway 101, or an updated pylon sign of the same height and square footage.

3. One off premises directional sign may be placed in the southeast quadrant of the intersection of Highway 101 and Pioneer Trail on Lot 2, Block 1, Halla Great Plains Addition. The sign content shall be as approved by City Staff in the sign permit. The sign may not exceed eight (8) feet in height and seventy-two (72) square feet in size per sign face. The sign may have two sides back-to-back or "V" shaped. The sign shall not be lit. Before erecting the sign, a sign permit must be obtained from the City. The sign must be removed when the lot on which it is located is sold.

The stipulation and judgment further provides that "[t]he action or inaction of the City shall not constitute a waiver or amendment to the provisions of this Stipulation," and "[e]xcept as otherwise provided herein, the Subject Property shall be subject to the requirements of the City's Zoning Ordinance, as may be amended from time to time." The stipulation and judgment also provides its provisions "shall be liberally construed to protect the public's interest."

Following the entry of judgment, the City issued a sign permit to Halla. The permit approved sign faces 8 feet in height and 72 square feet in total area. Halla then constructed the sign. Shortly after the sign was completed, the Chanhassen Community Development Director observed that the sign faces were illuminated in violation of the stipulation and judgment. The Director contacted Halla regarding illumination of the sign, but the conversation became confrontational, and the issue went unresolved. The City did not take any action, choosing instead to wait, assuming that the property would soon be sold and the sign torn down. The sign, however, remained standing and illuminated until 2005.

On March 28, 2005, the City received a new sign permit application from Halla. According to Halla, relocation of the sign was required due to road improvements at the intersection of Highway 101 and Pioneer Trail. The permit application indicated that Halla was planning to erect an illuminated monument sign that would be approximately 9 feet tall with a total area of 102 square feet. The application also indicated that the sign would have elec-

tronic message centers. On April 11, 2005, a permit for the new sign was issued by a Chanhassen city planner, who was not aware of the 1997 stipulation and judgment and apparently did not notice that the proposed sign would have electronic message centers.[1]

In early 2006, Halla began construction of the sign at a cost of $124,000. On April 28, 2006, with construction nearly complete, the City received a call from a concerned citizen who reported that electrical hook-ups were being installed on the sign. The City issued a stop-work order on the basis that a conditional use permit is required for electronic message centers. The City also determined that the new sign exceeded the size requirements for signs under the City Code.

In June 2006, Halla filed a complaint against the City seeking injunctive relief, declaratory judgment, and a writ of mandamus to prohibit the City from interfering with the use of the sign. The City filed a counterclaim, alleging that the sign violated the 1997 stipulation and judgment as well as the City's zoning ordinances. The City asserted that the sign was too large, impermissibly contained electronic message centers, and violated the stipulation and judgment's prohibition against illumination. Following a court trial and a motion for amended findings, conclusions, and judgment, the district court made the following conclusions:

- The 1997 stipulation and judgment "remain valid and enforceable."
- The two faces of the new sign are in substantial compliance with the stipulation and judgment. But the sign has a separate illuminated cabinet and electronic message centers, and the

sign is a general advertising sign, not a directional sign.

- Although the new sign was administratively approved, the stipulation and judgment required the City Council to approve any amendment to the stipulation and judgment.
- The new sign violates the City Code in that it is an off-premises sign that generally advertises the Halla Nursery business, the sign is too large for the zoning district, and the sign "is a moving and flashing sign not approved by conditional use permit."

Despite these conclusions, the district court conditionally granted Halla's request for injunctive relief on the basis that Halla had acquired vested rights in construction of the new sign because the sign was substantially completed when the City ordered Halla to stop work. In addition, the district court suggested that Halla was entitled to an illuminated sign based on the City's acquiescence in allowing an illuminated sign for eight years. The court placed certain restrictions on the operation of the sign that the court determined would result in substantial compliance with the prior history of use, the stipulation and judgment, and the 2005 City Code.

The City appealed, and Halla filed a notice of review. The court of appeals reversed in a published decision, concluding that (1) the district court erred in concluding that the City's inaction prevented it from enforcing the stipulation and judgment with respect to illumination; (2) the district court erred in concluding that the sign faces are in substantial compliance with the stipulation and judgment; and (3) the district court erred in conclud-

---

1. Under the Chanhassen City Code, all "moving" or "flashing" signs are prohibited except temperature signs or barber poles, which require a conditional use permit. Chanhassen, Minn., City Code § 20–1259 (2005). A "flash-

ing" sign is "any directly or indirectly illuminated sign which exhibits changing natural or artificial light or color effects by any means whatsoever." Chanhassen, Minn., City Code § 1–2 (2005).

ing that Halla acquired vested rights in the new sign. *Halla Nursery, Inc. v. City of Chanhassen,* 763 N.W.2d 42, 44 (Minn. App.2009).

We granted Halla's petition for review to address two issues: (1) whether the court of appeals erred as a matter of law in its interpretation of the 1997 stipulation and judgment and (2) whether the vested rights doctrine applies.

## I.

■ We first consider whether the terms of the 1997 stipulation and judgment authorized the construction of the sign. Halla contends that the 1997 stipulation and judgment granted it the right to build any sign, regardless of its compliance with the City Code, so long as Halla obtained a permit. The district court concluded that the sign did not comply with the 1997 stipulation and judgment because the stipulation and judgment did not allow additional off-premises signs, such as Halla's newly constructed sign. Stipulated judgments are treated as binding contracts. *Shirk v. Shirk,* 561 N.W.2d 519, 521 (Minn. 1997). The interpretation of a contract is a question of law, and therefore we review de novo the district court's interpretation of the 1997 stipulation and judgment. *See Valspar Refinish, Inc. v. Gaylord's, Inc.,* 764 N.W.2d 359, 364 (Minn.2009).

■ When interpreting a contract, we must determine if the language is clear and unambiguous, meaning it has only one reasonable interpretation. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998). If so, we give effect to the language of the contract. *Id.* The determination of whether a contract is unambiguous depends on the meaning assigned to the words and phrases in accordance with the apparent purpose of the contract as a whole. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn.1997).

The district court concluded that the sign violated paragraph 6A of the 1997 stipulation and judgment because it found that the sign is illuminated in violation of the prohibition against lit signs and that it is a general advertising sign, not a directional sign. These findings are supported by the evidence.

■ Halla asserts that if the sign is not allowed under paragraph 6A, it is allowed under paragraph 6C, which provides that "[a]ll signs are strictly prohibited, except as expressly allowed pursuant to paragraphs 6A and 6B of this Stipulation, or pursuant to a sign permit issued by the City." Essentially, Halla claims it is prohibited from constructing any sign not expressly allowed *unless* a sign permit is issued by the City. In other words, even if the disputed sign is too large, is improperly illuminated, and contains electronic message boards in violation of paragraph 6A, the sign is allowed as an exception under paragraph 6C because the City issued a permit for it and the sign conforms to the terms of the permit.

■ We conclude that Halla's interpretation of the interplay between paragraph 6A and paragraph 6C is an unreasonable reading of the terms of the stipulation and judgment. In order to read paragraph 6C in the manner in which Halla suggests, we essentially have to read it as allowing an otherwise prohibited sign so long as it is built pursuant to a sign permit issued by the City, *even if the permit violates the local zoning ordinances.* When viewed in isolation, the language of paragraph 6C could be read to imply that all permits, valid and invalid, will "trump" the specific limitations on signage under paragraph 6A. But the terms of a contract are not read in isolation. *Art Goebel,* 567 N.W.2d at 515. We read the stipulation and judgment as a whole, and the language implicitly added by Halla directly contradicts the

plain terms of paragraph 1: "[e]xcept as otherwise provided . . . [the property] shall be subject to the requirements of the City's Zoning Ordinance." By its plain terms, the stipulation and judgment states that the property shall be subject to the requirements of the local zoning ordinance "[e]xcept as otherwise provided." We cannot read paragraph 6C to allow permitted signs to violate the local zoning ordinances. Therefore, we hold that the sign built in accordance with the erroneously issued permit is not authorized by the 1997 stipulation and judgment.

## II.

■■■ Halla next contends that it acquired a vested right to complete and use the sign. The district court held that because Halla had substantially completed its sign at the time the City issued the stop-work order, Halla had vested rights to use the sign. Whether the doctrine of vested rights applies to the facts of a case is a question of law that we review de novo. *See State v. Pendleton,* 706 N.W.2d 500, 507 (Minn.2005).

■■■ We have applied two equitable doctrines, vested rights and equitable estoppel, to protect landowners or developers from governmental interference with projects already in progress.[2] *See Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 291, 294 (Minn.1980). The vested rights doctrine developed to resolve questions of "state control over private development through the use of zoning provisions and building permits." *Id.* at 294. Under the vested rights doctrine, a person acquires a vested right when a right has "'arisen upon a contract, or transaction in the nature of a contract, authorized by statute and liabilities under that right have been so far determined that nothing remains to be done by the party asserting it.'" *Id.* (quoting *Yaeger v. Delano Granite Works,* 250 Minn. 303, 307, 84 N.W.2d 363, 366 (1957)). When applying the doctrine, the court "asks whether a developer has progressed sufficiently with his construction to acquire a vested right to complete it." *Id.*

We have applied the vested rights doctrine to determine whether a landowner who substantially completed a project in reliance on a permitted use for the land acquired a vested right to continue that use despite that use being subsequently prohibited by a change in law. *See, e.g., id.* at 294–95 (applying vested rights doctrine to conclude no vested right existed in a case in which a new law prevented a developer from acquiring land financing that was previously available at the time the land was purchased); *Hawkinson v. County of Itasca,* 304 Minn. 367, 369, 231 N.W.2d 279, 280 (1975) (applying vested rights doctrine to conclude portions of a recreational-commercial business development that had sufficiently progressed were not subject to new zoning laws that limit the previously unzoned lots to residential use); *Kiges v. City of St. Paul,* 240 Minn. 522, 538, 62 N.W.2d 363, 373–74 (1953)

---

2. The equitable estoppel rule that is generally applied in land regulation cases states:

> A local government exercising its zoning powers will be estopped when a property owner, (1) relying in good faith (2) upon some act or omission of the government, (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired.

*Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980) (quoting David G. Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes,* 1971 Urb. L. Ann. 63, 66 (1971)). Equitable estoppel further requires that the government's act or omission be wrongful. *Id.* at 293. The doctrine of equitable estoppel is not at issue in this case.

(applying vested rights doctrine to conclude that receipt of a permit and excavation were insufficient to provide a vested right to build a retail cleaning establishment on property rezoned for residential).

Halla argues that the application of the vested rights doctrine to an erroneously issued sign permit in this case is supported by our holding in *Jasaka Co. v. City of St. Paul,* 309 N.W.2d 40 (Minn.1981). We disagree. In *Jasaka,* a company received a permit to build a radio tower on land that was not zoned for such use. *Id.* at 41–42. During construction, the tower was rotated so the footings were on the sturdiest ground, which resulted in one of the legs encroaching 15 feet onto the neighboring land. *Id.* at 42. The project was substantially complete when the city realized the encroachment and revoked the permit. *Id.* at 42–43. Without reaching the issue of whether Jasaka acquired a vested right in the erroneous permit, we held that the constructed tower did not comply with the permit because the tower encroached on the neighboring land. *Id.* at 44. In dicta, we commented that "[i]f the tower now stood wholly on Jasaka's property, and thus conformed with the terms of the permit, the rule developed in *Ridgewood* and *Hawkinson might* support a decision that Jasaka had acquired a vested right despite the invalidity of the building permit." *Id.* (emphasis added). We went on to say, "with rare exception a city is not estopped from denying the unlawful functions of its own officials," and that it was Jasaka's duty to determine if the tower met the zoning requirements, because "had it done so the most cursory inquiry would have disclosed the problems it now seeks to correct." *Id.*

We clarified our comments in *Jasaka* about the vested rights doctrine in *Snyder v. City of Minneapolis,* 441 N.W.2d 781 (Minn.1989), a case seeking damages under 42 U.S.C. § 1983 (1988). We denied relief under section 1983 because the claimant suffered no deprivation of a protected property interest, but permitted the plaintiff to recover in negligence. 441 N.W.2d at 787, 792. In concluding that Snyder had acquired no vested property right in an erroneously issued permit, we said: "when the owner of property has begun and made substantial progress in construction of a building, in reliance on a mistakenly issued building permit, the permit confers no vested property right." *Id.* at 792 (citing *Jasaka,* 309 N.W.2d at 44).

Other state supreme courts that have considered the issue have all concluded that vested rights do not arise from an erroneously issued building permit. *See, e.g., Quality Refrigerated Servs., Inc. v. City of Spencer,* 586 N.W.2d 202, 206 (Iowa 1998) (applying a two-part test to determine vested rights, which requires substantial expenditures before a change in law and that the expenditures made by the property owner were "lawful"); *Union County v. CGP, Inc.,* 277 Ga. 349, 589 S.E.2d 240, 242 (2003) (holding that "vested rights do not arise from the issuance of illegal building permits" because "[w]here a permit is issued by a governing body in violation of an ordinance, even under a mistake of fact, it is void" (citation omitted) (internal quotation marks omitted)); *Marzullo v. Kahl,* 366 Md. 158, 783 A.2d 169, 193 (2001) (holding in a vested rights analysis, "permits that have been issued that are in violation of the zoning ordinances are unlawful and cannot be grounds for estopping a municipality from the enforcement of the ordinance"); *Penn Twp. v. Yecko Bros.,* 420 Pa. 386, 217 A.2d 171, 173 (1966) ("[A] property owner who is able to demonstrate (1) that he has obtained a *valid* building permit under the old zoning ordinance, (2) that he got it in good faith—that is to say without 'racing' to get it before a proposed change was made in the zoning ordinance—and (3)

that in good faith he spent money or incurred liabilities in reliance on his building permit has acquired a vested right." (emphasis added)).

Having reviewed our precedent and the weight of persuasive authority from other states, we hold that the vested rights doctrine does not apply when a landowner substantially completes a project in reliance on an erroneously issued sign permit. Halla obtained an erroneously issued sign permit, and the City did not change zoning laws after the permit was issued to make the sign illegal. We conclude the court of appeals properly reversed the district court's conclusion that Halla acquired a vested right in the sign.

We affirm the court of appeals' reversal of the district court's order for judgment.

Affirmed.