*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1163**

Bruce Township,
Respondent,

vs.

Kevin Schmitz,
Appellant,

Nathan A. Baum, et al.,
Defendants.

**Filed March 21, 2016
Affirmed
Jesson, Judge**

Todd County District Court
File No. 77-CV-14-156

Joseph A. Krueger, Brown & Krueger, P.A., Long Prairie, Minnesota; and

Jason J. Kuboushek, Nathan C. Midolo, Iverson Reuvers Condon, Bloomington, Minnesota (for respondent)

Gary W. Koch, Matthew C. Berger, Peter J. Hemberger, Gislason & Hunter LLP, New Ulm, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Kirk, Judge; and Jesson, Judge.

UNPUBLISHED OPINION

**JESSON**, Judge

Appellant Kevin Schmitz constructed an animal feedlot on his property in Bruce Township, Todd County, which has enacted an ordinance requiring a conditional use permit for new feedlots of a certain size. In this action, the township sought to declare its feedlot ordinance valid and enforce a related conditional-use permit on Schmitz's property. The district court granted summary judgment in favor of the township. On appeal, Schmitz argues that the township's failure to comply with statutory requirements to file the ordinance with the county recorder and furnish a copy to the county law library render the ordinance unenforceable. Because under Minn. Stat. § 462.36 (2014), failure to record the conditional-use-permit ordinance does not affect its validity, and because the statutory filing requirements at issue are directory, not mandatory, we reject his argument. We also affirm the district court's summary judgment on Schmitz's claim of interference with a vested property right and equitable-estoppel defense.

## FACTS

In 2002, Bruce Township adopted a feedlot ordinance, which requires a conditional-use permit before expanding an existing feedlot or constructing a new feedlot housing more than ten animal units. Bruce Township, Minn., Feedlot Ordinance §§ 725.11-.93, 726 (2002).[1] The ordinance also contains setback requirements from existing residences. Feedlot Ordinance §§ 725.51-.52. A Minnesota statute specifies that, when a town adopts

---

[1] An animal unit is defined as the average weight of the animal species divided by 1,000 pounds. Bruce Township Feedlot Ordinance, § 725.29(4).

a zoning ordinance, the governing body "shall record" a certified copy with the county recorder. Minn. Stat. § 394.33, subd. 1 (2014). Another statute provides that a copy of the ordinance "must be furnished to the county law library." Minn. Stat. § 415.021 (2014). A third statute requires that certain ordinances, including those relating to conditional-use permits, "shall be filed with the county recorder," but also specifies that the failure to record an ordinance "shall not affect its validity or enforceability." Minn. Stat. § 462.36, subd. 1. After its enactment, the township did not file the ordinance with the county recorder or furnish a copy to the county law library.

In September 2012, Schmitz, who had operated feedlots in another county, entered into a contract for deed in property located in the township in order to conduct a livestock operation. Between September and November 2012, he incurred expenses by making improvements to the property, including installing electric and water lines and moving equipment from another location.

When planning the project, Schmitz had contacted the Minnesota Pollution Control Agency (MPCA) because in Benton County, where he had previously operated a feedlot, MPCA regulations were the only applicable regulations. Around the end of September, he also met with Ed Uhlenkamp, a Todd County resource conservationist. The two men had previously discussed plans for another feedlot site, which Schmitz was considering developing at a different location. During the earlier discussion, Uhlenkamp gave Schmitz the applicable rules for the other site, but did not mention that some townships have their own zoning regulations.

In November 2012, Uhlenkamp drove by the Bruce Township site owned by Schmitz and saw livestock there. He emailed the town clerk, stating that the site would not be in compliance with state and county feedlot rules. The clerk responded that a conditional-use permit from the township would also be necessary for a feedlot.

In December 2012, Schmitz and the contract-for-deed vendors applied to Bruce Township for a conditional-use permit for a feedlot for 200-300 animal units from October 1 to May 1, and 30-40 animal units from May 1 to October 1.[2] After public hearings focused on setback requirements, the township planning commission recommended, and the Bruce Township Board of Supervisors approved, a conditional-use permit that required the applicants to obtain a variance from applicable setback requirements.

In March 2013, Schmitz withdrew the permit for 300 animal units and submitted a new application for a 30-animal-unit feedlot. After another public hearing and a planning-commission recommendation, the board of supervisors approved the conditional-use permit with conditions of enforcing a 30-animal-unit limit, surveying the property, and bringing into compliance an existing nonconforming building on the boundary line between Schmitz's property and an adjacent property. Schmitz did not meet these conditions and contends that they rendered a feedlot operation on the site impracticable.

In February 2014, the township filed a complaint in district court, seeking an injunction prohibiting Schmitz from operating a feedlot that did not meet ordinance

_____

[2] The district court entered default judgment against the contract-for-deed vendors, who are not participating in this appeal.

4

requirements and the conditional-use-permit conditions. The complaint alleged that a township-board member had visited the property and observed more than 65 animals on Schmitz's property. Schmitz filed an answer and counterclaims, seeking dismissal of the complaint, an injunction against enforcing the ordinance, a declaration that it was unenforceable against him, and damages. He alleged that the ordinance was not enforceable because it had not been filed with the county recorder or placed in the county law library, as required by statute. He also asserted a claim for interference with a vested property right and an affirmative defense of equitable estoppel, maintaining that he received notice of the ordinance only after incurring expenses to prepare the property for feedlot use. He alleged additional counterclaims of an unconstitutional taking and trespass. The township then filed the feedlot ordinance with the county recorder and placed a copy in the county law library.

After cross-motions for partial summary judgment, the district court granted the township's motion and denied Schmitz's motion. The district court held as a matter of law that the township ordinance was not void for failure to comply with statutory filing requirements. The district court also concluded that, under undisputed facts, Schmitz had not acquired a vested right to use the property as a feedlot and could not prove reasonable reliance on any wrongful conduct by the township to support an equitable-estoppel defense. Pursuant to the parties' later stipulation, the district court entered final judgment, ordered Schmitz to comply with the ordinance requirements, and dismissed his trespass and constitution-related claims with prejudice. This appeal follows.

**D E C I S I O N**

On appeal from summary judgment, this court determines whether genuine issues of material fact exist and whether the district court correctly applied the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn. 2012). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Wensmann Realty, Inc. v. City of Eagan*, 734 N.W.2d 623, 630 (Minn. 2007). But we review de novo the district court's application of the law. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 610 (Minn. 2012). The interpretation of an existing statute or ordinance presents a question of law for the court. *RDNT, LLC, v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015).

**I**

In Minnesota, county governments, in all but the most populous counties, are largely responsible for land use planning and zoning activities. Minn. Stat. § 394.21 (2014). Each county is encouraged to prepare and implement a community-based comprehensive plan and, based upon that plan, to adopt "official controls." Minn. Stat. §§ 394.23, .232 (2014). These official controls, adopted by county ordinance, require public input and may be used for purposes as varied as wetlands preservation, sewage disposal and feedlot zoning. Minn. Stat. §§ 394.24-.26 (2014). Counties are also authorized to issue conditional-use permits, which may be approved on a showing that the standards and criteria stated in the relevant ordinance are satisfied. Minn. Stat. § 394.301 (2014). The Minnesota legislature has made clear that townships, such as Bruce Township, are also vested with authority to enact official controls, such as zoning ordinances, as long as they are consistent with, and no less

6

restrictive than, county controls. Minn. Stat. § 394.33 (2014). We have held that this statute did not prohibit a township from validly enacting a feedlot ordinance that is more restrictive than county ordinances. *Altenburg v. Bd. of Supervisors of Pleasant Mound Twp.*, 615 N.W.2d 874, 880 (Minn. App. 2000), *review denied* (Minn. Nov. 21, 2000).

When a municipality, such as a township, undertakes land use planning, including adoption of a comprehensive plan, official controls and zoning ordinances, it does so based on the authority created by the legislature set out in Minnesota's municipal planning act, Minn. Stat. §§ 462.351-.365 (2014). Under that act, townships, like counties, also have authority to issue conditional-use permits. Minn. Stat. § 462.3595.

Schmitz concedes that Bruce Township had the authority to adopt the feedlot ordinance. He contends, however, that the township's undisputed failure to comply with the statutory mandate to record the ordinance renders it unenforceable against his feedlot.

*Recording requirement and consequence of failure to file ordinance*

Two Minnesota statutory provisions address the need to file an ordinance relating to zoning controls with the county recorder. The statute that addresses town powers in the context of county planning and zoning states that "[u]pon the adoption or amendment of any official controls the governing body of the town shall record a certified copy thereof with the county recorder or registrar of titles." Minn. Stat. § 394.33, subd. 1. The statute that governs municipal planning and zoning provides as follows:

> A certified copy of every ordinance, resolution, map, or regulation adopted under the provisions of sections 462.358, 462.359, and 462.3595 shall be filed with the county recorder of the county or counties in which the municipality adopting it is located. . . . Failure to record an ordinance, resolution, map,

7

> regulation, variance, or order shall not affect its validity or enforceability.

Minn. Stat. § 462.36, subd. 1.

Both statutory provisions require the township to record the ordinance, but the latter also includes language stating that failure to record an ordinance "shall not affect its validity or enforceability." *Id.* Schmitz argues that the ordinance is governed only by Minn. Stat. § 394.33, which is silent on the effect of the failure to record. Further, he claims that Minn. Stat. § 462.36, with its exculpatory language, applies only to a limited number of ordinances, which do not include the feedlot ordinance that is the subject of this lawsuit. The district court concluded that Minn. Stat. § 394.33 must be read in conjunction with Minn. Stat. § 462.36 because chapter 462 authorizes local governments to engage in planning, and section 462.36 refers in turn to Minn. Stat. § 462.3595, which authorizes local governing bodies to designate conditional uses and grant conditional-use permits.

This issue presents a matter of statutory interpretation, which we review de novo. *Johnson v. Cook Cty.*, 786 N.W.2d 291, 293 (Minn. 2010). If a statute's language is unambiguous, this court applies its plain meaning. Minn. Stat. § 645.08 (2014). To determine the meaning of a particular statute, this court examines the full-act context of the statutory provision. *Glen Paul Court Neighborhood Ass'n v. Paster*, 437 N.W.2d 52, 56 (Minn. 1989); *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn. App. 2002), *review denied* (Minn. May 28, 2002).

Schmitz argues that the feedlot ordinance was adopted pursuant to Minn. Stat. § 394.33, which is referenced in the ordinance. *See* Feedlot Ordinance § 725.11. But

"Minn. Stat. § 394.33 is not an enabling statute which grants towns authority to enact zoning ordinances. It merely permits them to continue to zone as provided by law." *Scinocca v. St. Louis Cty. Bd. of Comm'rs*, 281 N.W.2d 659, 661 (Minn. 1979). Rather, the township derives its power to conduct zoning activities from the municipal planning act. *See* Minn. Stat. §§ 462.357, subd. 1; .352, subds. 2, 15. Thus, the Bruce Township Feedlot Ordinance, a township zoning control, was adopted pursuant to chapter 462.

The object of statutory interpretation is to determine and effectuate legislative intent. Minn. Stat. § 645.16 (2014). Minn. Stat. § 462.36 provides that "[f]ailure to record an ordinance . . . shall not affect its validity or enforceability." Because Bruce Township's zoning authority derives from the municipal planning act, the language in Minn. Stat. § 462.36, a provision of that act, applies to the feedlot ordinance. *See Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 617 (Minn. 2008) (stating that legislative intent may be ascertained by considering, among other things, the language of other statutes that address the same subject matter); *Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 11, 153 N.W.2d 209, 217 (1967) (stating that statutes in pari materia covering the same subject matter should be construed in light of each other).

Schmitz further argues that the exculpatory language in Minn. Stat. § 462.36 does not apply to the feedlot ordinance because the ordinance was not adopted under one of the three statutory sections explicitly mentioned in Minn. Stat. § 462.36: Minn. Stat. § 462.358 (relating to subdivision regulations); Minn. Stat. § 462.359 (relating to official maps); or Minn. Stat. § 462.3595 (relating to conditional-use permits). He maintains that the feedlot ordinance was instead adopted under a different provision, Minn. Stat. § 462.357, subd. 1g,

9

which relates specifically to feedlots. We disagree. The alternative ordinance suggested by Schmitz contains requirements for notifying the MPCA and the commissioner of agriculture when feedlot zoning controls are proposed. Minn. Stat. § 462.357, subd. 1g. But that statute does not generally deal with substantive requirements for feedlot zoning controls, which are the very subject of the Bruce Township Feedlot Ordinance. By its terms, the feedlot ordinance requires a conditional-use permit for a new feedlot of ten or more animal units. Feedlot Ordinance § 725.421. That permit must contain an animal waste plan with an operational and maintenance plan, along with construction plans. Feedlot Ordinance § 725.431.[3] Thus, the feedlot ordinance is "adopted under the provision[] of . . . section[] 462.3595," and filing with the county recorder is required under Minn. Stat. § 462.36.

Although recording is required Minn. Stat. § 462.36, subd. 1, also provides that failure to file the ordinance does not render it unenforceable. Therefore, reading Minn. Stat. § 394.33 in conjunction with Minn. Stat. § 462.36, we conclude that failure to file a certified copy of a township ordinance relating to a conditional use permit with the county recorder does not invalidate that ordinance. The district court did not err by declaring the feedlot ordinance enforceable despite the township's failure to file it with the county recorder.

---

[3] Schmitz argues that the feedlot ordinance has a broader scope than only conditional uses. But even if this is true, it does not change our conclusion that the conditional-use statute, Minn. Stat. § 452.3595, governs the issuance of conditional-use permits under the ordinance.

10

*Mandatory or directory statutory requirements*

In addition, the district court's summary judgment on the recording issue may be affirmed based on our conclusion that the filing provisions of Minn. Stat. § 394.33 and Minn. Stat. § 415.021, which requires furnishing a copy of the ordinance to the county law library, are directory, rather than mandatory. A statute is generally considered mandatory when it expresses the consequences of a failure to comply with its provisions. *Sullivan v. Credit River Twp.*, 299 Minn. 170, 176-77, 217 N.W.2d 502, 507 (1974). On the other hand, when a statute contains a requirement but provides no consequence for noncompliance, it is considered directory. *Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 541 (Minn. 2007). Violation of a directory requirement in a statute does not invalidate the action taken. *State by Lord v. Frisby*, 260 Minn. 70, 77, 108 N.W.2d 769, 773 (1961). The district court concluded that Minn. Stat. § 415.021 (furnishing a copy to the law library) was directory, rather than mandatory, but did not address whether Minn. Stat. § 394.33, subd. 1 (filing the ordinance with the county recorder), was also directory.

Minn. Stat. § 394.33 provides that the township board "shall record" a copy of the ordinance with the county recorder. Although "[s]hall" is typically defined as "mandatory," Minn. Stat. § 645.44, subd. 16 (2014), that definition states only a rule of construction, which does not bind the courts. *Szczech v. Comm'r of Pub. Safety*, 343 N.W.2d 305, 307 (Minn. App. 1984). Minn. Stat. § 394.33, subd. 1, and Minn. Stat. § 415.021 do not provide consequences for the failure to record an ordinance or place it in the law library. Therefore, we conclude that those statutory requirements are directory, and failure to follow them does not per se invalidate the feedlot ordinance. *See, e.g.,*

11

*Johnson*, 786 N.W.2d at 295 (holding that a statutory provision requiring written reasons for the denial of a zoning application was directory when it did not provide a consequence for failure to comply).

Schmitz argues that, because he is an affected property owner, failure to record the feedlot ordinance renders the feedlot ordinance unenforceable with respect to his property, citing *Paster*, 437 N.W.2d at 57. In *Paster*, the Minnesota Supreme Court held that failure to notify affected property owners of a proposed zoning amendment by mail, as required by statute, invalidated the amendment proceedings. *Id*. But unlike the property owner in *Paster*, Schmitz has not alleged that he lacked notice of proceedings to adopt or amend a zoning ordinance that would affect his existing property. When he obtained his interest in the property, the feedlot ordinance was already in place, and he is subject to its terms. "A property owner is charged with knowledge of whether a local zoning ordinance permits construction undertaken on the property." *Stotts v. Wright County*, 478 N.W.2d 802, 805 (Minn. App. 1991), *review denied* (Minn. Feb. 11, 1992).

"If a statutory rule is directory, generally prejudice must be shown before the failure to comply with that rule potentially warrants relief." *Riehm v. Comm'r of Pub. Safety*, 745 N.W.2d 869, 876 (Minn. App. 2008), *review denied* (Minn. May 20, 2008). In addition, if no bad faith is shown in the violation of a directory statute, a court may decline to invalidate that statute. *See, e.g., Lindahl v. Indep Sch. Dist. No. 306*, 270 Minn. 164, 169-70, 133 N.W.2d 23, 27 (1965) (stating that even when statutory provisions "clearly and expressly" impose certain requirements on school bonding elections, a court need not "impose the drastic consequence of invalidity" if the court concludes "there was no fraud, bad faith, or

misleading of the voters" (quotation omitted)). Schmitz, who has not asserted that he checked with the county recorder or law library before beginning feedlot construction, has failed to produce evidence that he was prejudiced by the township's failure to file the ordinance in those locations. He has not alleged that the township acted fraudulently or in bad faith. Because he has shown no prejudice or bad faith related to violations of Minn. Stat. §§ 394.33 or 415.021, the township's failure to comply with those directory provisions does not render the feedlot ordinance unenforceable.[4]

## II

Schmitz argues that, because he was a property owner and completed substantial improvements before he received notice of the feedlot ordinance, he had a vested right to use the property as a feedlot. Whether the doctrine of vested rights applies to a case presents a question of law, which this court reviews de novo. *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 885 (Minn. 2010).

If a landowner has substantially completed a project in reliance on a permitted use, but a change in the law later prohibits that use, he may be able to continue the project under the equitable doctrine of vested rights. *Id*. But because we have concluded that the feedlot ordinance was valid and enforceable when Schmitz made his feedlot improvements, the doctrine of vested rights does not apply here. In addition, a right becomes vested for the

---

[4] We note that, even if a statute does not provide a consequence for noncompliance, if it requires a governmental body to perform a certain act, that act may be compelled by mandamus. *Hans Hagen Homes, Inc.*, 728 N.W.2d at 541. But Schmitz never sought that remedy to enforce either Minn. Stat. § 394.33 or Minn. Stat. § 415.021, and in any event, such an action would have been moot following the filing and recording of the ordinance in 2014.

13

purpose of this doctrine when it arises under a contract or a transaction of a contractual nature, and the "contract" in zoning cases refers to the issuance of a valid permit. *Stotts*, 478 N.W.2d at 805; *see also Halla Nursery, Inc.*, 781 N.W.2d at 887 (holding that a property owner did not acquire a vested right to complete a project when a permit was erroneously issued). When Schmitz made feedlot-related improvements to his property, he had not yet acquired a conditional-use permit, which was required by existing ordinance. Therefore, the district court did not err by concluding that Schmitz did not acquire a vested right to improve the property as a feedlot and by granting summary judgment to the township on that claim.

## III

Schmitz argues that the district court erred by rejecting his defense that the township was equitably estopped from enforcing the feedlot ordinance against his property. A party who seeks to establish equitable estoppel against a government entity must establish that: (1) an authorized government agent has engaged in wrongful conduct; (2) the party seeking equitable relief has reasonably relied on that conduct; (3) that party has incurred a unique expenditure in reliance on the conduct; and (4) the balance of the equities weighs in favor of estoppel. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 25 (Minn. 2011). The party seeking equitable estoppel against a governmental agency has a "heavy burden of proof." *Id.* (quotation omitted). When the facts permit only one conclusion, the application of equitable estoppel presents a legal question. *State v. Ramirez*, 597 N.W.2d 575, 577 (Minn. App. 1999).

14

The district court concluded, as a threshold matter, that the township committed wrongful conduct by failing to comply with the statutory requirements of recording the ordinance and furnishing a copy to the county law library. We agree. Wrongful conduct by a government entity does not include "simple inadvertence, mistake, or imperfect conduct," *Sarpal*, 797 N.W.2d at 25 (quotation omitted). But when a statute requires a governmental body to perform a certain act, it is reasonable to assume that it will do so. *Hans Hagen Homes, Inc.*, 728 N.W.2d at 541. We conclude that the township's failure to comply with the statutory filing directives, which were subject to enforcement by mandamus, constituted wrongful conduct.

Nonetheless, to resist summary judgment on the issue of equitable estoppel, Schmitz was also required to present evidence tending to show that he relied on the township's wrongful conduct. *See Mesaba Aviation Div. v. Cty. of Itasca*, 258 N.W.2d 877, 880 (Minn. 1977). Schmitz acknowledged in his deposition that he did not investigate whether any township feedlot restrictions applied to his property, but "talked to the county," which was "all the further [he] thought [he] had to go." He produced no evidence to show that he had checked with the county recorder or the county law library about any township feedlot restrictions.

Schmitz argues that he indirectly relied to his detriment on his communications with Uhlenkamp, which were equivalent to an affirmative misrepresentation that he could use the property for a feedlot. But Uhlenkamp was a county employee, not a township employee. The county is not a party to this action, and any representation Uhlenkamp made with respect to county regulations cannot bind the township in this lawsuit. In

15

addition, a private party seeking to apply equitable estoppel against a government agency must show that the government's wrongful conduct actually induced the private party's detrimental reliance. *Nw. Airlines, Inc. v. Cty. of Hennepin*, 632 N.W.2d 216, 221 (Minn. 2001). Here, the wrongful conduct alleged is the township's failure to file the feedlot ordinance with the county recorder or to place a copy in the law library. Schmitz has not produced evidence that the township's failure to perform these acts actually induced him to undertake his feedlot improvements.

We conclude that the final two factors, the property owner's undertaking unique expenditures and the weighing of the equities, are not dispositive in this case. *Sarpal*, 797 N.W.2d at 25. Although both parties argue persuasively that the equities weigh in their favor, because we conclude that Schmitz cannot demonstrate that he reasonably relied on wrongful government conduct, the district court did not err by granting summary judgment on Schmitz's equitable estoppel defense.

**Affirmed.**