**Maurice PATTERSON and Beatrice Patterson, Plaintiffs–Appellants,**

v.

**CENTRAL MILLS, INC. d/b/a/ "Freeze" and Meijer, Inc., Defendant–Appellee.**

No. 01–3551.

United States Court of Appeals, Sixth Circuit.

April 30, 2003.

---

Before: NORRIS and GILMAN, Circuit Judges; and MCKEAGUE, District Judge.*

OPINION

MCKEAGUE, District Judge.

Maurice Patterson and his mother, Beatrice Patterson, brought suit against Central Mills, Inc. ("Central Mills"), and Meijer, Inc. ("Meijer"), alleging they manufactured and sold a defective t-shirt that caused Maurice to sustain extensive burns. After an eight-day trial on plaintiffs' breach of warranty and products liability claims, a jury returned a verdict in favor of defendants. The Pattersons appeal, arguing that the district court erred in several of its evidentiary rulings, that certain jury instructions were improper, and that the verdict was against the manifest weight of the evidence. For the reasons set forth below, we AFFIRM the judgment of the district court.

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

## I. Background

### A. Factual Background

In the fall of 1996, Beatrice Patterson bought a "Tasmanian Devil" t-shirt for her ten year-old son Maurice at a Meijer store in Maumee, Ohio. Meijer had purchased the shirt from Central Mills, which was in the business of buying blank t-shirts, screening various images on them, and distributing them for retail sale. Maurice's shirt was an adult size and made of a 50/50 blend of cotton and polyester.

On January 26, 1997, Maurice was wearing this shirt and a pair of boxer shorts while watching the Super Bowl on television in the living room of his home. Beatrice Patterson was asleep in her bedroom and an adult step-brother was in another bedroom. At some point during the game, Maurice decided to cook some hot dogs for dinner. He went to the kitchen, took a package of hot dogs out of the refrigerator, placed them on the counter, then turned on the right front burner of the gas stove. After this, he climbed onto the counter in order the search the cabinets above for a bottle of ketchup.

As Maurice leaned over to search the cabinets above the stove, the bottom left edge of his shirt came into contact with the lit burner and caught fire. When he realized the shirt was on fire, Maurice unsuccessfully attempted to put it out with his hands. He then jumped down from the counter and went over to the kitchen sink. By the time he reached the faucet, however, the flames were surrounding Maurice's face and he ran from the kitchen yelling for his mother.

When Beatrice reached her son, she removed the few small pieces of the shirt that had not already burned. Maurice was then transported to the hospital for emergency care, after which he spent several weeks in a burn center to treat the second and third degree burns that covered 25 to 35 percent of his body. He has since undergone several surgeries and extensive physical therapy.

### B. Procedural Background

The Pattersons filed this diversity action in the Lucas County (Ohio) Court of Common Pleas, from which it was properly removed to the United States District Court for the Northern District of Ohio.[1] Prior to trial, Meijer and Central Mills filed two motions in limine at issue here. The first sought to exclude from evidence a video depicting Maurice Patterson's therapy, special dressing requirements, and post-surgery condition. The district court granted this motion in part, finding portions of the tape cumulative, irrelevant, and more prejudicial than probative. Defendants' second motion in limine sought to prohibit Gordon Damant, the Pattersons flammability expert, from testifying regarding flammability warnings on clothing. The district court granted this motion in its entirety after conducting a *Daubert* hearing.

The case then proceeded to trial, where the district court made several other evidentiary rulings at issue in this appeal. First, plaintiffs' exhibits 8 and 9, consisting of advertisements for flame-retardant materials and samples of flammability warning labels, were excluded as hearsay. In addition, the district court ordered the Pattersons to redact portions of Consumer Products Safety Commission (CPSC) pub-

---

1. Plaintiffs' second amended complaint named as defendants Meijer, Central Mills, Warner Brothers, The Screen Place, and Fruit of the Loom/Union Underwear. Plaintiffs vol- untarily dismissed the latter two defendants, while the district court granted Warner Brothers' motion for summary judgment.

lications that contained statements by individual commissioners.

At the close of trial, the district court instructed the jury on the applicable law. Over plaintiffs' objections, these included instructions on defendants' affirmative defenses of misuse and assumption of the risk. Ultimately, the jury returned a verdict in favor of defendants, finding by special interrogatory that the Pattersons had failed to prove their case by a preponderance of the evidence. After the district court denied their motion for a new trial, plaintiffs' filed this appeal.

## II. ANALYSIS

### A. Evidentiary Rulings

This Court reviews the district court's decision to exclude evidence or expert testimony for an abuse of discretion. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Trepel v. Roadway Exp., Inc.,* 194 F.3d 708, 716–17 (6th Cir.1999). An abuse of discretion occurs when the reviewing court is left with the "definite and firm conviction" that the district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Haywood,* 280 F.3d 715, 720 (6th Cir.2002) (citation omitted).

### 1. Advertisements, Warning Labels, and Videotapes

First, plaintiffs challenge the exclusion on hearsay grounds of a series of 1970s-era advertisements by manufacturers of flame-retardant materials. The Pattersons contend that the advertisements were offered for the non-hearsay purpose of showing defendants' knowledge of the availability of such materials. Since this argument was not raised before the district court, however, it is waived on appeal

absent circumstances amounting to manifest injustice. *See United States v. Midwest Fireworks Mfg. Co., Inc.,* 248 F.3d 563, 566 (6th Cir.2001); *Brown v. Crowe,* 963 F.2d 895, 897–98 (6th Cir.1992). No such circumstances are present in this case.

■ The Pattersons next argue that the district court erred in excluding as irrelevant several flammability warning labels found on children's sleepwear. Relevant evidence is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401; *see also United States v. Carter,* 969 F.2d 197, 200 (6th Cir.1992). Because relevancy determinations depend on the exercise of considerable judgment within the context of an entire trial, they will not be lightly overruled. *United States v. Stull,* 743 F.2d 439, 445 (6th Cir. 1984).

Here, plaintiffs contend that the warning labels were relevant to demonstrate the foreseeability of children's exposure to open flames. Since these labels were solely from children's sleepwear, however, their bearing on the fire risk posed by an adult t-shirt such as that worn by Maurice Patterson is dubious at best. Indeed, the record reveals that *no* company attached warning labels to adult t-shirts at any time relevant to this case. Given this, the district court did not abuse its discretion in excluding the children's sleepwear labels.

■ Third, plaintiffs argue that the district court erred in excluding portions of a videotape of Maurice Patterson. The district court determined that "much of the activity depicted on the tape (lifting weights, dressing, being salved) can be described in testimony," making it cumulative, and, in any event more prejudicial than probative. Other activities, such as

coughing and lying in a hospital bed, were ruled irrelevant. On review, we cannot say that these determinations were an abuse of discretion.

### 2. Expert Testimony of Gordon Damant

■ The district court also granted defendants' motion in limine to limit the scope of testimony from Gordon Damant, plaintiffs' flammability expert. In the exercise of their gatekeeping role under the Federal Rules of Evidence, district courts are responsible for determining the relevance and reliability of all expert testimony. *See* Fed.R.Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Factors that may be taken into account in making this flexible determination include the proferred expert's knowledge. experience, education, training, and peer review. *See Daubert,* 509 U.S. at 589, 593, 113 S.Ct. 2786.

Here, testimony at the *Daubert* hearing revealed that Damant had never written flammability warnings for clothing, had no specific education on warnings, had no specific training with respect to warnings on clothing, and had never had an article regarding clothing subjected to peer review. Indeed, Damant's only experience with flammability warnings came with regard to those placed on mattresses and furniture. Given this, the district court did not abuse its discretion in preventing Damant from testifying on the issue of warnings on clothing.

### 3. CPSC Statements

■ The Pattersons further contend that the district court erred in excluding as hearsay portions of CPSC press releases and publications. Plaintiffs were ordered to redact portions of these publications containing "a statement of a member and [ ] not the statement of the agency or commission." Such commissioner statements included: "[A]s a mother, I hope parents will wisely choose the safer alternative of tight-fitting cotton sleepwear" and "it is imperative that a visible point of purchase label of some type be on the garment or inside the garment wrapper."

Federal Rule of Evidence 803(8)(C) provides that the following are not excluded by the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8)(C). The Supreme Court has interpreted this "public records" exception to the hearsay rule broadly to include both conclusions and opinions of public offices and agencies. *Beech Aerospace Services, Inc. v. Rainey,* 488 U.S. 153, 162, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) ("[F]actually based conclusions or opinions are not on that account excluded from the scope of Rule 803(8)(C)."); *see also Bank of Lexington & Trust Co. v. Vining–Sparks Securities, Inc.,* 959 F.2d 606, 616 (6th Cir.1992)("Opinions, conclusions, and evaluations, as well as facts, fall within the Rule 803(8)(C) exception.").

The public records exception, however, extends only to opinions of the agency or public office *itself,* not to those of its individual members contained within the records. *See United States v. Midwest Fireworks Mfg. Co., Inc.,* 248 F.3d 563, 566 (6th Cir.2001)(allowing into evidence CPSC report including laboratory test results and data collected by CPSC scientists). Given

this, the district court did not abuse its discretion by ordering plaintiffs to redact from official publications the statements of individual commissioners contained therein.[2]

## B. Jury Instructions

 Jury instructions are reviewed "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72 (6th Cir.1990). The district court may only be reversed if the instructions were confusing, misleading, or prejudicial. *See id.*

In this case the district court's "misuse" instruction stated in part: "If you find that Maurice Patterson misused the T-shirt in a way that defendants could not have foreseen, and that such misuse was a proximate cause of his injuries, then you will find in favor of the defendants." As to assumption of the risk, the district court instructed: "If you find by a preponderance of the evidence that plaintiff impliedly assumed the risk of injury, then you will find in favor of defendants."[3] The Pattersons argue that the these instructions were confusing, misleading, and prejudicial because they were not supported by the evidence introduced at trial.

This argument must be rejected. As to misuse, Maurice Patterson wore the shirt while leaning over a lit stove to retrieve a bottle of ketchup. The jury certainly could have found that this use was not foreseeable to defendants, and that it was a proximate cause of the burns Maurice sustained. As to assumption of the risk. Maurice admitted at trial that he knew clothing would burn if exposed to open flames.

The Pattersons have failed to offer any other support for the argument that the

---

2. The Pattersons further argue that, even if not admissible under 803(8)(C), these statements were admissible for a non-hearsay purpose. Since this argument was not raised before the district court, however, it is therefore waived on appeal. *See Midwest Fireworks Mfg. Co., Inc.,* 248 F.3d at 566.

3. The complete instructions read:

> Should you find that plaintiffs have met their burden of proof on all elements of their implied warranty/strict products liability claims against either Central Mills or Meijer, or their statutory product liability claim against Central Miller, you must then consider the additional affirmative defenses raised by defendants.
>
> First, defendants claim that Maurice Patterson misused the T-shirt in a way that the defendants could not have foreseen. The test for foreseeability is whether under all the circumstances, a reasonably cautious manufacturer or seller would have anticipated that a consumer of the product was likely to use the product in the same way that you find the plaintiff used the T-shirt. If you find by a preponderance of the evi-

> dence that Maurice Patterson misused the T-shirt in a way that the defendants could not have foreseen, and that such misuse was a proximate cause of his injuries, then you will find in favor of the defendants on both the implied warranty claim and the statutory product liability claim.
>
> Second, defendants also claim that Maurice Patterson impliedly assumed the risk of injury. Plaintiff impliedly assumed the risk of injury if he had knowledge of a condition that was obviously dangerous to him and voluntarily exposed himself to that risk of injury. In considering whether Maurice Patterson assumed a known risk, you must ask whether the risks were so obvious that he must have known and appreciated the risk. In making this determination, you must ask yourself whether a child of similar age, education, and experience would or should have been aware of the risks associated with his action. If you find by a preponderance of the evidence that plaintiff impliedly assumed the risk of injury, then you will find in favor of defendants on both the implied warranty and the statutory product liability claims.

challenged instructions were confusing, misleading, or prejudicial. Even if the instructions were confusing or misleading, however, any error was harmless since the verdict was based on liability rather than affirmative defenses. *See Wallace v. Ener,* 521 F.2d 215 (5th Cir.1975)(any error in damages instructions was harmless in light of jury's verdict for defendants on issue of liability).

### C. Manifest Weight of the Evidence

■ Finally, the Pattersons contend that the district court erred in denying their motion for a new trial, which argued that the verdict was against the manifest weight of the evidence. This Court reviews a district court's denial of a motion for a new trial for an abuse of discretion. *See Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 820 (6th Cir.2000). A new trial should not be granted if a reasonable juror could reach the challenged verdict. *See id.* at 820–21. Moreover, the court "is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.*

In this case, the verdict is amply supported by the evidence. According to both experts testifying at trial, the Tasmanian Devil t-shirt reacted as would any other shirt of similar composition under similar circumstances. In addition, defendants' expert offered uncontroverted testimony that the shirt was not defective, was safe for its intended purposes, and met all government burn rate standards. Finally, the evidence revealed that, while generally a very safe consumer product, over ninety percent of clothing burns readily when exposed to flame. Based on this evidence, a reasonable juror certainly could have found that Maurice's shirt was not defec-

tive and that it was no more dangerous than an ordinary consumer would expect when used in a reasonably foreseeable manner. Given this, the district court did not abuse its discretion in denying the Pattersons motion for a new trial.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.