# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1731
_____

General Mills Operations, LLC

*Plaintiff - Appellee*

v.

Five Star Custom Foods, Ltd.

*Defendant - Appellant*

Westland Meat Company, Inc.,
also known as Hallmark Meat Packing Co.;
Hallmark Meat Packing, Inc.

*Third Party Defendant*s

_____

No. 12-1826
_____

General Mills Operations, LLC

*Plaintiff - Appellant*

v.

Five Star Custom Foods, Ltd.

*Defendant - Appellee*

Westland Meat Company, Inc., also known as Hallmark Meat Packing Co.;
Hallmark Meat Packing, Inc.

*Third Party Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 14, 2012
Filed: January 7, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

General Mills Operations, LLC purchased meatballs from Five Star Custom Foods, Ltd. After delivery and use of the meatballs, Five Star's supplier of ground beef issued a recall. Accordingly, General Mills destroyed its products containing the meatballs. It sued Five Star for breach of contract and breach of warranties. The district court[1] granted summary judgment to General Mills on the breach-of-contract claim, and to Five Star on the breach-of-warranty claims. The parties cross-appeal. Five Star also challenges the award of attorneys' fees to General Mills. Having jurisdiction under 28 U.S.C. § 1291, this court affirms the grant of summary judgment to General Mills and the award of attorneys' fees. General Mills' cross-appeal is dismissed as moot.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

-2-

## I.

Five Star is a manufacturer and supplier of food products. General Mills is a manufacturer of food products that are sold to retail consumers. For over ten years, Five Star sold products to General Mills, including meatballs for Progresso soups.

This case involves two orders for meatballs by General Mills in September 2007. The orders were subject to General Mills' Terms and Conditions (printed on the reverse of the purchase order) and General Mills' Ingredient Specifications. The meatballs were delivered on September 29 and October 5, 2007, and used in Progresso soups.

Five Star purchased some of the beef used to manufacture the meatballs from Westland Meat Company, Inc. In February 2008, Westland voluntarily recalled over 143 million pounds of beef, including some used in General Mills' meatballs. Video footage from the Humane Society allegedly showed Westland employees improperly handling cattle designated for slaughter. There were no reports of illness from the beef, but after discussions with the United States Department of Agriculture and the Food Safety Inspection Service, Westland issued the voluntary recall. The USDA issued a Product Recall Recommendation describing the circumstances of the recall, issued a Recall Release to the public, and held a Technical Briefing for members of the industry. The recall reached only the retail level, meaning that end consumers were not required to destroy their products.

Per instructions from the USDA, Five Star notified its customers, providing instructions on destroying affected products. General Mills complied, destroying all of the affected soups. In 2010, General Mills sued Five Star for negligence, breach of contract, breach of express warranties, and breach of the implied warranties of merchantability and fitness for a particular purpose. General Mills voluntarily dismissed the negligence claim. The parties cross-moved for summary judgment. The

district court granted summary judgment to General Mills on the breach-of-contract claim, and to Five Star on the breach-of-warranty claims. *General Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1160 (D. Minn. 2011). The parties stipulated to $1,473,564 in damages and $150,000 in attorneys' fees.

## II.

Five Star argues that the district court should not have granted summary judgment to General Mills on the breach-of-contract claim. This court reviews de novo a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant. *Cent. Platte Natural Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1146 (8th Cir. 2011). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

A successful breach-of-contract claim under Minnesota law has four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000). At issue here is the third element – whether Five Star materially breached the contract. Because General Mills accepted the meatballs, it has the burden to establish a breach. **Minn. Stat. § 336.2-607(4)**.

Several contract provisions are at issue in this case. The Terms and Conditions state:

> 5. GOODS: The Goods shall conform in all respects to the description on the face of this Order, and/or [General Mills'] then current specifications furnished to [Five Star]. The Goods, including, without limitation, tools and equipment shall be new, of first class commercial type and of the latest approved design, unless otherwise specified on the

-4-

face of this Order. Workmanship and materials shall be of the best quality and free from defects that might render the Goods unsuitable or inefficient for the purpose for which it is to be used. [Five Star] warrants and guarantees its Goods for the period of time normally specified for the type of Goods involved. During the warranty period, all Goods or parts disclosing defects in design, material, and/or workmanship shall be replaced and delivered to the job site by [Five Star] without cost or delay to [General Mills]. This warranty is in addition to and not in lieu of, any other warranties or guarantees made by [Five Star] or created or implied as a matter of law. The above warranties, as well as all other warranties contained herein, including, without limitation, the warranties in paragraphs 6, 8, 9, 10, 12, 18, 20, 21, 25 and 26 shall collectively be defined herein as "Warranties."

. . . .

25. COMPLIANCE WITH LAW: [Five Star]'s performance under this Order shall be in compliance with all applicable federal, state, and local laws, ordinances, regulations, rules and statutes ("Laws").

The Ingredient Specifications include:

REGULATORY

. . . .

This ingredient shall be of food grade and in all respects, including labeling in compliance with the Meat Inspection Act of 1906 as amended.

. . . .

Stunning, slaughter, and processing practices must meet or exceed the requirements established by the USDA and the World Animal Health Organization for safe trade in animal products.

These regulations require the meatballs to be of food grade, and for the beef to be procured pursuant to USDA regulations. Five Star contends, however, that there is no admissible evidence establishing the alleged breach of those duties. Even viewing the record most favorably to the nonmovant, the court should not consider statements that are inadmissible hearsay. *Novotny v. Tripp County*, 664 F.3d 1173, 1178 (8th Cir. 2011); **Fed. R. Civ. P. 56(c)(2)**. Five Star argues that General Mills relies exclusively on the Recall Release issued by the USDA Public Affairs Office. That release stated: "all beef product produced during the period of time for which evidence indicates such activity occurred had been determined by FSIS to be unfit for human consumption, and is, therefore, adulterated."

Five Star objects that the press release is inadmissible hearsay. General Mills responds that it is not hearsay because it was not offered to prove the truth of the matter asserted. *See* **Fed. R. Evid. 801(c)(2)**; *see also* ***Stevens v. Moore Bus. Forms, Inc.***, 18 F.3d 1443, 1449 (9th Cir. 1994) (press release admissible to prove knowledge), *citing* ***Kunz v. Utah Power & Light Co.***, 913 F.2d 599, 605 (9th Cir. 1990) (press release admissible to prove notice). General Mills asserts that the press release is offered to show why it destroyed the beef, not the truth of the matter asserted – that the Westland beef was actually adulterated. There must be some evidence, however, demonstrating that the beef did not comply with the contract. As to that, the press release is hearsay.

Even so, the press release falls within the public-records hearsay exception. The exception provides that a "record or statement of a public office" is not hearsay if it sets out, in a civil case, "factual findings from a legally authorized investigation." **Fed. R. Evid. 803(8)(A)(iii)**. The cases Five Star cites where press releases were inadmissible hearsay do not foreclose admissibility as a public record. In fact, Five Star's only published opinion supports this point. *See* ***Zeigler v. Fisher-Price, Inc.***, 302 F. Supp. 2d 999, 1021 n.10 (N.D. Iowa 2004). Five Star cites *Zeigler* for the proposition that "a press release regarding a product recall was hearsay unless used

as an admission by party-opponent under Fed. R. Evid. 801(d)(2)." This ignores the court's statement, "To the extent the press release can be construed as stating conclusions or opinions of the CSPC, it also was admissible under Federal Rule of Evidence 803(8)(c)." *Id.*, *citing Patterson v. Cent. Mills, Inc.*, 64 F. Appx. 457, 462 (6th Cir. 2003).[2]

Many press releases are certainly hearsay. Rule 803(8), however, is construed broadly. *Patterson*, 64 F. Appx. at 462, *citing Beech Aerospace Servs., Inc. v. Rainey*, 488 U.S. 153, 162 (1988). In *Patterson*, the Sixth Circuit addressed statements in "press releases and other publications" of the Consumer Products Safety Commission about defective labeling of t-shirts. *Id.* at 459, 462. The district court required the personal statements of Board members to be redacted (e.g., "as a mother, I hope parents will wisely choose the safer alternative of tight-fitting cotton sleepwear"), but allowed other statements of facts, opinions, and conclusions of the agency. *Id.* at 462. The Sixth Circuit affirmed this approach. *Id.* Similarly here, the press release sets out findings from an investigation pursuant to authority granted by

---

[2]None of Five Star's other cases discuss Rule 803(8), nor discuss in detail the admissibility of press releases. *See Smith v. Pfizer, Inc.*, No. 3:05-0444, 2010 WL 1754443, at *1 n.1 (M.D. Tenn. Apr. 30, 2010) (ruling that the "government's press releases" would be inadmissible hearsay, but not describing the contents of the releases, the purpose for which they were offered, or the grounds on which they were excluded); *Sullivan v. Chesapeake La., L.P.*, No. 09-0579, 2009 WL 3735798, at *2 (W.D. La. Nov. 6, 2009) (noting that "unauthenticated press releases" are inadmissible hearsay, but not mentioning authenticated press releases or releases issued as a result of a government investigation); *Century Colo. Springs P'ship v. Falcon Broadband, Inc.*, No. 05-cv-02295-REB-MJW, 2006 WL 521791, at *3 & n.3 (D. Colo. Mar. 2, 2006) (ruling that a press release, issued by a business, was hearsay, while denying only the argument that the release was an admission by a party opponent); *Mwani v. Bin Ladin*, No. 99-125 (CKK), 2002 U.S. Dist. LEXIS 27826, at *22-23 (D.D.C. Sept. 30, 2002) (ruling that press releases from the State Department and the President were hearsay, but not discussing the releases' contents or Rule 803(8)); *In re Draganoff's Estate*, 252 N.Y.S.2d 104, 108 (N.Y. Sur. Ct. 1964) (stating that a proffered press release was hearsay without discussing its contents).

law, and is therefore admissible.  *See also* **Byrd v. ABC Prof'l Tree Serv., Inc.**, 832 F. Supp. 2d 917, 921 n.3 (M.D. Tenn. 2011).

Further, as the district court noted, additional evidence supported the conclusion that the meat was procured in violation of regulations and that it was adulterated.  *See* **General Mills**, 789 F. Supp. 2d at 1157 n.12.  On the same day the press release issued, the USDA conducted a Technical Briefing about the recall.  A transcript of this briefing is in the record.  The Undersecretary for Food Safety delivered, *inter alia*, a summary of the investigation:

> First of all, I do want to remind everyone that this is still an ongoing investigation and therefore we may not be able to answer all of your questions today.  As a result of the USDA's ongoing investigation, the FSIS, the Food Safety and Inspection Service, just recently obtained evidence that [Westland] had a practice that allowed them to occasionally slaughter cattle that had already passed ante mortem inspection but had become nonambulatory prior to entering the slaughter operation without notifying our public health veterinarian.  This practice is not compliant with FSIS regulations.

> Therefore, FSIS determined that their products were unfit for human food because the cattle did not receive complete and proper inspection.

This illustrates the same point as the press release.  Although Five Star attacks the Technical Briefing as also hearsay, it similarly falls under the exception in Rule 803(8) for the reasons explained.  Five Star also asserts that both statements contradict the Product Recall Recommendation.  It used qualifiers like "allegedly" and "may be adulterated" to describe Westland's situation.  In any event, all three documents show that FSIS had evidence of practices that violated regulations.  Then, as a result of that ongoing investigation, Westland agreed to recall the beef.

Further, as noted by the district court, Five Star admitted that its understanding was that the beef "had been recalled by the USDA because it didn't meet the USDA's regulations." This admission is in a deposition of Five Star's corporate designee. *See* **Fed. R. Civ. P. 30(b)(6)**. Five Star contends that its designee is not competent to testify about the actual reasons for the recall, because he had no personal knowledge of the events at Westland. *See* **Fed. R. Evid. 602**. The designee certainly is competent to testify, however, as to Five Star's understanding – that is the precise function of the corporate designee. This admission illustrates that all parties had the same understanding: the recall issued because Westland did not comply with USDA regulations. The admission is particularly relevant because Five Star in turn directed General Mills (albeit at the behest of the USDA) to destroy the meatballs.

Sufficient, admissible evidence established that the beef was procured in violation of USDA regulations, and that it was therefore deemed adulterated. Five Star breached the contract. Five Star correctly notes that contract terms are not read in isolation, rather the contract is read as a whole. *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010). They argue that the regulatory section of the Ingredient Specifications, read as a whole, does not establish liability for Five Star, because Westland was an approved facility with proper procedures in place. Given their plain meaning, the contract terms do not support this argument. *See* *Brookfield Trade Ctr. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) ("In interpreting a contract, the language is to be given its plain and ordinary meaning."). The terms require "[s]tunning, slaughter, and processing practices [that] meet or exceed the requirements established by the USDA."

Five Star contends that General Mills must prove that the specific product received was adulterated, or procured in a noncompliant manner. This argument is without merit. The cases cited by Five Star support the position that receiving a good that is not in compliance with the contract results in a breach. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 451 (5th Cir. 2001) (boat hull manufactured of a less

durable material than specified in the contract); ***US Salt, Inc. v. Broken Arrow, Inc.***, No. 07-1988 (RHK/JSM), 2008 WL 398818, at *4 (D. Minn. Feb. 11, 2008) (salt did not meet specifications in contract for washing, drying, and color). All of the recalled beef was deemed unfit for human food – that is why the recall issued.[3] By the terms of the contract, General Mills ordered meatballs of food grade for use in food products, which is not what it received.

Five Star also argues that this event did not trigger the contract's recall provision, and thus there is no breach of contract. Paragraph 27 says:

> 27. RECALL: [General Mills] shall have the sole right, exercisable in its discretion, to initiate and direct the content and scope of a recall, market withdrawal, stock recovery, product correction and/or advisory safety communication (any one or more referred to as "Recall Action") regarding the Goods. At [General Mills]'s option, [General Mills] may direct [Five Star] to, and upon such direction [Five Star] shall, conduct such Recall Action. [General Mills] shall determine in its discretion the manner, text and timing of any publicity to be given such matters in the event a Recall Action is initiated or directed by [General Mills], [Five Star] agrees to fully cooperate and take all such steps as are reasonably requested to implement the Recall Action in a timely and complete manner. Any and all action to be taken in connection with a Recall Action shall be in accordance with FDA policies and other Laws. [Five Star] shall bear the costs associated with any Recall Action which results

---

[3]This case is distinguishable from *Land O'Lakes Creameries, Inc. v. Commodity Credit Corp.*, 185 F. Supp. 412 (D. Minn. 1960), where the issue was how much insect infestation in barrels of dried milk was required to prove that the whole shipment was unfit for human consumption. Here, all of the meat from Westland was deemed to be unfit for human consumption.

from [Five Star]'s negligence or willful misconduct or that the Goods do not comply with [Five Star]'s Warranties under this Order.

Where a contract provides a specific basis for recovery, it excludes additional theories of recovery. *See **Art Goebel, Inc. v. N. Suburban Agencies, Inc.***, 567 N.W.2d 511, 515-16 (Minn. 1997). Because there was no negligence or willful misconduct by Five Star (and the breach of warranty claims were dismissed by the district court), Five Star contends that it is not liable. However, as the court in *Art Goebel* explained, the contract terms must be read in the context of the entire agreement. **Art Goebel**, 567 N.W.2d at 516; *see also* **Halla Nursery**, 781 N.W.2d at 884. To make a remedy exclusive, the contract "must clearly indicate the intent of the parties to make the stipulated remedies exclusive." **Cont'l Grain Co. v. Fegles Constr. Co.**, 480 F.2d 793, 796 (8th Cir. 1973), *citing* **Indep. Consol. Sch. Dist. No. 24 v. Carlstrom**, 151 N.W.2d 784, 786-87 (Minn. 1967). Several other provisions in the contract refer to other remedies from a recall. Paragraph 10, for example, states, "[Five Star] shall promptly pay or reimburse [General Mills] for all costs and damages (including lost profits) incurred by [General Mills], including, without limitation, costs for . . . recall." Paragraph 27 is not the exclusive recall remedy. Further, even considering just the language of Paragraph 27, it contemplates a recall issued *by* General Mills, not the situation here.

The district court properly granted summary judgment to General Mills on the breach-of-contract claim.

## III.

The district court granted summary judgment to Five Star on the breach-of-warranty claims, ruling that General Mills needed to show an actual defect to prove any breach of warranty. **General Mills**, 789 F. Supp. 2d at 1155.

-11-

The parties stipulated that $1,473,564 is the amount of damages in this case. At oral argument, both parties confirmed that the stipulated damages would be awarded for either breach of contract, breach of warranty, or both. Having found that Five Star breached the contract, this court need not address whether it also breached warranties. General Mills' cross-appeal is therefore dismissed as moot. *See **Beachwalk Homeowners Ass'n v. Gen. Star Indem. Co.***, 76 F. Appx. 494, 495 (4th Cir. 2003); ***Laitram Corp. v. NEC Corp.***, 115 F.3d 947, 955-56 (Fed. Cir. 1997); ***Abraham v. Pekarski***, 728 F.2d 167, 169 (3d Cir. 1984); ***Univ. Computing Co. v. Lykes-Youngstown Corp.***, 504 F.2d 518, 548 n.44 (5th Cir. 1974); *cf.* ***Minnesota ex rel. N. Pac. Ctr., Inc. v. BNSF Ry. Co.***, 686 F.3d 567, 574-75 (8th Cir. 2012).

Five Star argues that the district court should have treated the breach-of-contract claims identically to the breach-of-warranty claims because the terms of the contract are, in essence, express warranties. As noted, the district court ruled that breach-of-warranty claims require the plaintiff to prove an actual defect in the product. This court makes no statement on the accuracy of that ruling, although the district court correctly said that "evidence of a defect is not an essential element of a breach-of-contract claim." ***General Mills***, 789 F. Supp. 2d at 1155; *see* ***Parkhill***, 174 F. Supp. 2d at 961. Therefore, the district court properly analyzed these claims separately.

IV.

Five Star asserts that the district court erred by awarding attorneys' fees to General Mills. This court reviews de novo the legal issues related to an award of attorneys' fees, and reviews the actual award for abuse of discretion. ***Pendleton v. QuikTrip Corp.***, 567 F.3d 988, 994 (8th Cir. 2009). In order to award attorneys' fees, there must be a contractual agreement discussing the fees. ***Garrick v. Northland Ins. Co.***, 469 N.W.2d 709, 714 (Minn. 1991). The parties stipulated to $150,000 in attorneys' fees.

The clause providing for attorneys' fees is:[4]

10. AUDIT/INSPECTION:

. . . .

(c)[Five Star] shall promptly pay or reimburse [General Mills] for all costs and damages (including lost profits) incurred by [General Mills], including, without limitation, costs for packaging, handling, transportation, recall, destruction, production, and other administrative costs including legal fees, which arise or result from the delivery of Goods by [Five Star] that is not in accordance with the Warranties or any other term in this Order.

Five Star argues on appeal that the doctrine of *ejusdem generis* applies, so that "legal fees" relates only to the administration of the recall. This argument was not raised in the district court, and will not be considered for the first time on appeal. *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 875 (8th Cir. 2012). As the district court noted: "Five Star does not dispute that the contract provides for attorneys fees; it merely argues that General Mills has no right to such fees because it cannot show that there was any breach." *General Mills*, 789 F. Supp. 2d at 1160. The district court properly found that Five Star breached the contract, and appropriately awarded attorneys fees to General Mills.

* * * * * * *

The judgment is affirmed. General Mills' cross-appeal is dismissed as moot.

_____

_____

[4]General Mills argues that the indemnification clause also provides for attorneys' fees, but as this case does not involve a third-party claim, the indemnification clause is not triggered.

-13-