NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALPEK POLYESTER, S.A. DE C.V., FKA GRUPO PETROTEMEX, S.A. DE C.V., DAK AMERICAS LLC,**
*Plaintiffs-Appellants*

**v.**

**POLYMETRIX AG,**
*Defendant-Appellee*

---

2021-1706

---

Appeal from the United States District Court for the District of Minnesota in No. 0:16-cv-02401-SRN-HB, Judge Susan Richard Nelson.

---

Decided:  December 16, 2021

---

ERIC W. SCHWEIBENZ, Oblon, McClelland, Maier & Neustadt, LLP, Alexandria, VA, argued for plaintiffs-appellants.  Also represented by ALEXANDER BEACH ENGLEHART, J. DEREK MASON, JOHN PRESPER.

TODD NOAH, Dergosits & Noah LLP, San Francisco, CA, argued for defendant-appellee.

---

Before LOURIE, O'MALLEY, and STOLL, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Alpek Polyester, S.A. and DAK Americas LLC[1] appeal from the decision of the United States District Court for the District of Minnesota granting summary judgment of no inducement in favor of Polymetrix, A.G. ("Polymetrix"). *See Grupo Petrotemex, S.A. DE C.V. v. Polmetrix A.G.*, No. 16-cv-2401, 2021 WL 1239894 (D. Minn. Apr. 2, 2021) ("*Summary Judgment Decision*"). Alpek also appeals from other decisions issued by the district court in conjunction with the denial of summary judgment, including denial of Alpek's motion to strike a declaration submitted in support of Polymetrix's motion for summary judgment and denial of Alpek's motion to amend its complaint, *see id.*, as well as the district court's denial of Alpek's motion to compel production of an opinion of counsel. *See Grupo Petrotemex, S.A. DE C.V. v. Polmetrix A.G.*, No. 16-cv-2401, 2020 WL 1983747 (D. Minn. Apr. 26, 2020) ("*Motion to Compel Decision*"). For the reasons provided below, we *affirm* all of the district court's decisions.

## BACKGROUND

Alpek Polyester, S.A. is a Mexican company that owns U.S. Patents 7,790,840, 7,868,125, and 7,192,545 (collectively, the "patents-in-suit"), which are directed to methods and processes for producing polyethylene terephthalate ("PET") resin used to create plastic bottles and containers. DAK Americas LLC is Alpek's American affiliate and the exclusive licensee of the patents-in-suit.

Polymetrix is a Swiss engineering company that supplies equipment and engineering services for the

---

[1]    At the time this appeal was filed, Alpek Polyester, S.A. was known as Grupo Petrotemex, S.A. de C.V. *See* Dkt. 27. We refer to the appellants collectively as "Alpek."

construction of plants that manufacture PET resin. Polymetrix does not itself manufacture PET resin; rather, Polymetrix manufactures and sells polymer processing equipment, including equipment that uses Polymetrix's EcoSphere™ technology.

In February 2013, Polymetrix contracted with Indorama Ventures Poland sp. z o.o. ("IVP") to equip a manufacturing plant located in Wloclawek, Poland with the EcoSphere™ process. IVP is a subsidiary of Indorama Ventures Public Company Limited ("Indorama Ventures"), which is a global petrochemicals producer with more than 100 manufacturing facilities in more than 30 countries around the world. *Summary Judgment Decision*, 2021 WL 1239894, at \*3.

Polymetrix completed its work under the contract on July 5, 2014, after which the contract provided for a "commissioning period" before final payment. *Id.* During the commissioning period, Polymetrix retained ownership of the equipment installed at the plant while IVP conducted performance tests. The contract allowed Polymetrix to review the results of the performance tests, *see id.* at \*12, but there is no indication that the contract specified who was required to perform the tests or where they would be performed.

During the commissioning period, IVP undertook to conduct the performance testing referenced in the contract. On three occasions, IVP sent one or more samples of PET to one of its affiliate laboratories—Auriga Polymers, Inc. ("Auriga") and AlphaPet, Inc. ("AlphaPet")—in the United States. First, on July 7, 2014, IVP sent two PET resin samples to Auriga for interlaboratory cross-checking of IVP's own laboratory results. *See id.* at \*4. Second, on July 17, 2014, an AlphaPet employee named Jay Gosain returned from a visit to IVP with a sample of PET that he personally carried into the United States. *See id.* at \*4–5. Third, on October 27, 2014, IVP sent a 30 kg PET sample to Auriga

"in order to have Auriga make preforms" and have those preforms "analyzed in a laboratory." *Id.* at *6.

Alpek sued Polymetrix in the United States District Court for the District of Minnesota on July 12, 2016. Alpek accused Polymetrix of actively inducing infringement of the patents-in-suit under 35 U.S.C. § 271(b) by causing IVP to import into the United States a product produced by a patented process. The parties engaged in a complicated and protracted international discovery process, most of which is not relevant to the outcome of this appeal. We discuss here the few issues which are of particular import to the various motions that are at issue before us.

The first relevant discovery issue pertains to Polymetrix's initial disclosures under Federal Rule of Civil Procedure 26. Specifically, Polymetrix did not disclose Puneet Saini as an "individual likely to have discoverable information" that Polymetrix "may use to support its claims or defenses." *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Mr. Saini is the director of IVP, and his name was referenced on more than 1,000 documents produced during discovery. Relevant to this appeal, Polymetrix later relied on a declaration from Mr. Saini in support of its summary judgment motion, and Alpek moved to strike the declaration.

The second relevant discovery issue pertains to depositions in mid-2020 during which Alpek's counsel questioned witnesses about Polymetrix's ownership of the IVP plant equipment during the commissioning period and Polymetrix's knowledge regarding testing done by IVP through its United States affiliates. Based on those depositions, on August 14, 2020, Alpek moved to amend its complaint to add a count of direct infringement, which the magistrate judge later denied because it was filed ten months after the deadline set forth in the scheduling order for amended pleadings. *See* J.A. 149–67.

Additionally, on September 29, 2020 Alpek's counsel elicited the following testimony from Yash Awasthi, who

testified as a corporate representative of Auriga and AlphaPet pursuant to Federal Rule of Civil Procedure 30(b)(6):

> Q. And was the sample that Mr. Gosain took back to the United States taken in order to perform interlaboratory cross-checking for Polymetrix?
>
> A. Yes, for Polymetrix. They requested the sample to be sent to -- along with, and the results were provided to them of polymers and esterification sample. It was at the request of Mr. Puneet Saini, as I said.

J.A. 12204. Mr. Awasthi later clarified that he "thought [counsel] had said IVP, but apparently [counsel] might have said Polymetrix." J.A. 12215.

The third relevant discovery issue pertains to Polymetrix's assertion of privilege over an opinion it obtained from its counsel in 2017 while this litigation was pending. At that time, Polymetrix was negotiating with Sanlian Hope ("Sanlian"), a Chinese company, for an asset sale that would make Sanlian the majority shareholder of Polymetrix. *See Motion to Compel Decision*, 2020 WL 1983747, at *1. During the negotiations, Polymetrix communicated with Sanlian about an opinion of counsel it received concerning Alpek's infringement allegations, and Sanlian then disclosed a brief summary of the opinion in public filings with the Shenzhen Stock Exchange. *Id.* at *1–2. Alpek contended that the attorney-client privilege had been waived and moved for production of the opinion and related documents, which the magistrate judge denied. *Id.* at *1. The district court affirmed the order of the magistrate judge. *Id.*

On September 1, 2020, Polymetrix moved for early summary judgment of no inducement on the basis that Alpek had no evidence with which it could prove at trial that Polymetrix caused IVP to import any PET into the

United States.  Notably, in support of its motion for summary judgment, Polymetrix relied on Mr. Saini's declaration in which he attested that all decisions made by IVP to send samples to the United States were made by IVP alone without any input or influence from Polymetrix.

In opposing Polymetrix's motion, Alpek argued that disputed issues of fact remained for the jury regarding whether Polymetrix caused IVP to import PET into the United States.  Alpek set forth two theories of causation.  The first theory was that Polymetrix's entry into the contract with IVP was itself an act that satisfied the causation element because the contract caused IVP to send PET samples to the United States.  The second theory of causation was that, even if Polymetrix did not proactively cause importation to the United States, Polymetrix retroactively ratified the importation by receiving and using test results that it knew were from laboratories in the United States.  For both theories, Alpek relied heavily on Mr. Awasthi's alleged admission that the July 17, 2014 sample was sent to the United States "for Polymetrix."

The district court first denied Alpek's motion to strike.  The court found that, because Mr. Saini's significance was well known to Alpek through discovery, his declaration was not prejudicial and was properly considered as part of the record on summary judgment.  *See Summary Judgment Decision*, 2021 WL 1239894, at *9–10.

The court then proceeded to grant Polymetrix's motion for summary judgment of no inducement because Alpek had no admissible evidence to prove either of its causation theories.  *Id.* at *10–13.  The court found that Mr. Awasthi's "for Polymetrix" statement was inadmissible under Federal Rule of Evidence 602 because he lacked personal knowledge of the reasons why Mr. Gosain brought the July 17, 2014 sample into the United States.  *Id.* at *5.  The court also found that "the contract between IVP and Polymetrix does not expressly require IVP to test PET produced

using the EcoSphere process in the United States" and thus it "does not itself *require* an infringing act." *Id.* at *12 (emphasis in original). And the court found that Alpek had "not raised a genuine dispute of fact regarding whether Polymetrix used AlphaPet's data." *Id.* at *12–13.

As for Alpek's motion to amend its complaint, the court affirmed the magistrate judge's denial of the motion. *Id.* The court credited the magistrate judge's finding that Alpek had sufficient information to support its allegations before the expiration of the October 2019 deadline to amend pleadings, and that the depositions in 2020 did not provide the type of "lightbulb moment" that Alpek was relying upon for its showing of good cause to amend after the deadline. *Id.* at *14–16.

Alpek appealed from the district court's grant of summary judgment of no inducement, including the court's underlying denial of its motion to strike the Saini declaration. Alpek also appealed from the court's denial of its motion to amend as well as the court's denial of its motion to compel production of documents relating to the opinion of counsel. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.

We begin by addressing the issues relating to summary judgment, including the district court's ultimate legal conclusion as well as the underlying discovery and evidentiary rulings. Alpek makes four arguments challenging the court's grant of summary judgment. First, Alpek argues that the court abused its discretion by disregarding Mr. Awasthi's admission that the July 17, 2014 sample was brought into the United States "for Polymetrix." Second, Alpek argues that the court erred by finding that Polymetrix did not ratify IVP's importation by using test results from the United States. Third, Alpek argues that the court erred in failing to recognize fact disputes that stem from

Polymetrix's ownership of the equipment under a Swedish law interpretation of the contract. And fourth, Alpek argues that the court erred by declining to strike the Saini declaration upon which Polymetrix heavily relied to support its summary judgment motion.

Polymetrix responds that causation is an essential element of induced infringement, and that the court properly granted summary judgment because Alpek had no evidence with which it could demonstrate at trial that Polymetrix caused IVP to import any product into the United States. Polymetrix also responds to each individual argument raised by Alpek.

We review a district court's grant of summary judgment according to the law of the regional circuit. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1303 (Fed. Cir. 2015) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1377 (Fed. Cir. 2014)). The Eighth Circuit reviews a grant of summary judgment de novo. *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017) (citing *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000)). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With the relevant standard in mind, we address each of Alpek's arguments.

A.

Alpek first argues that the district court improperly disregarded Mr. Awasthi's admission that the July 17, 2014 sample was brought into the United States "for Polymetrix." Alpek contends that Mr. Awasthi's statement was admissible testimony under Federal Rule of Evidence 602 because the law does not require a witness testifying pursuant to Federal Rule of Civil Procedure 30(b)(6) to have personal knowledge of the matters about which that witness testifies. Alpek thus argues that, because Mr. Awasthi was testifying as a Rule 30(b)(6) corporate

representative on behalf of AlphaPet, it is immaterial whether he personally had knowledge of IVP's reasons for sending the sample to the United States.

Polymetrix first responds that Mr. Awasthi simply misspoke in one answer during his deposition. Polymetrix points to Mr. Awasthi's later testimony during which he unequivocally corrected himself by clarifying that he had intended to say "IVP" rather than "Polymetrix." Polymetrix also argues in support of the district court's evidentiary conclusion that a Rule 30(b)(6) corporate representative is only competent to testify about information known to the corporation. According to Polymetrix, because neither Mr. Awasthi nor AlphaPet had knowledge of IVP's reasons for sending the July 17, 2014 sample to the United States, the court correctly found that such evidence was inadmissible under Federal Rule of Evidence 602, and thus could not be relied upon by Alpek to oppose summary judgment.

Under Eighth Circuit law, "[a]t summary judgment, the requisite 'genuine dispute,' Fed. R. Civ. P. 56(a), must appear in *admissible* evidence." *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014) (emphasis in original) (citing *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010)). "A district court has wide discretion in ruling on the admissibility of proffered evidence, and we review the district court's ruling on evidentiary issues for an abuse of discretion." *Harris v. United States Dep't of the Army*, 119 F.3d 1313, 1321 (8th Cir. 1997) (citing *Gillming v. Simmons Indus.*, 91 F.3d 1168, 1172 (8th Cir. 1996)).

We find that the district court did not abuse its discretion in declining to consider Mr. Awasthi's alleged admission. As a matter of law, it is true that Mr. Awasthi's status as a Rule 30(b)(6) witness rendered him competent to testify in his deposition about matters that may have been outside of his own personal knowledge. To be considered at summary judgment, however, that deposition testimony must be admissible in evidence. *See Brooks v. Tri-Sys.,*

*Inc.*, 425 F.3d 1109, 1112 (8th Cir. 2005) (citing *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310–11 (8th Cir. 1993)).  A party may rely on deposition testimony from an *adverse* party at a hearing (such as at summary judgment) or introduce such testimony at trial.  *See* Fed. R. Civ. P. 32(a)(3) ("An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) . . . ."); *see also* Fed. R. Evid. 801(d)(2).  But in this case, Mr. Awasthi, being a third-party 30(b)(6) witness, did not testify on behalf of a party and thus his deposition testimony would not be admissible at trial under Federal Rule of Evidence 801(d)(2).  Nor could Alpek rely on Federal Rule of Civil Procedure 32(a)(3) as a basis for admitting Mr. Awasthi's testimony, given this rule likewise applies only to the corporate testimony of an adverse party.

That Mr. Awasthi was not a party's 30(b)(6) witness distinguishes this case from *General Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1110 (8th Cir. 2013), where the disputed 30(b)(6) testimony was of a party and relied on by an adverse party at summary judgment.  Thus, to be admissible for purposes of summary judgment (and trial), Mr. Awasthi's testimony was subject to the personal knowledge requirement of Federal Rule of Evidence 602.  But the district court expressly noted that Mr. Awasthi lacked personal knowledge of any reasons IVP may have had for sending the July 17, 2014 sample with Mr. Gosain into the United States.  *See Summary Judgment Decision*, 2021 WL 1239894, at *5.  Accordingly, on this record, we cannot say that the court abused its discretion in finding Mr. Awasthi's statement to be inadmissible.

Moreover, even if we were hesitant about the evidentiary exclusion of Mr. Awasthi's testimony, his alleged admission would still be insufficient to create a genuine dispute of material fact.  Alpek rested huge portions of its inducement theories on two words—"for Polymetrix"—

excerpted from one question in one deposition in the larger context of a protracted discovery process that lasted years. And the implication that Alpek wishes to draw from those two words—that Polymetrix somehow *caused* IVP to send a PET sample with Mr. Gosain on his flight back to the United States—is contrary to the overwhelming majority of the evidence which demonstrates that Polymetrix had no knowledge or concern about where, when, or how IVP conducted performance tests.

In context, it is abundantly clear that Mr. Awasthi simply misheard the question asked of him. The transcript demonstrates that he was asked ". . . for Polymetrix?" and he responded "Yes, for Polymetrix." J.A. 12204. But the remainder of his answer demonstrates that he was actually referring to IVP, not to Polymetrix. Notably, after stating that "they requested the sample to be sent" and the results to be "provided to them," Mr. Awasthi stated "[i]t was at the request of Mr. Puneet Saini, as I said." *Id.* Unsurprisingly, Mr. Saini was the director of IVP, not Polymetrix. Mr. Awasthi later explicitly testified that he had misheard the question and misspoke during his answer. J.A. 12215.

It is well recognized that "[t]he primary purpose of a motion for summary judgment is to avoid a useless trial, and summary judgment is a procedural device for promptly disposing of actions in which there is no genuine issue of any material fact even though such issue might have been raised by formal pleadings." *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972); *see also, e.g., Northwest Motorcycle Ass'n v. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (stating that summary judgment exists to avoid "unnecessary" trials); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) ("The purpose of the rule is to eliminate a trial in cases where it is unnecessary and would only cause delay and expense."). In this case, Alpek wishes to proceed to trial on the basis of a single witness's momentary loss of focus for a span of a single question and answer during his deposition. But the summary judgment

standard requires a *genuine* dispute about a material fact; no such genuine dispute exists here regarding Polymetrix's lack of knowledge or interest in whether the July 17, 2014 sample entered the United States.

B.

Turning to the second argument, Alpek contends that Polymetrix retroactively ratified IVP's importation of PET samples into the United States by receiving test results that it knew were from laboratories in the United States and incorporating those results into its own report. Alpek's expert witness was prepared to testify that test results from AlphaPet "match up almost exactly" with data in a report prepared by Polymetrix. *See* J.A. 6815–16.

Polymetrix responds that Alpek failed to present evidence with which it could prove that the data in Polymetrix's report came from AlphaPet test results. Specifically, Polymetrix argues that Alpek's expert based his entire opinion on an estimated line that he drew on a blurry figure that shows a plot of hundreds of viscosity measurements. *See* Polymetrix Br. at 34; *see also* J.A. 6815–16 (expert witness comparing data in an email, J.A. 12599–600, to data in a Polymetrix report, J.A. 8906)). Polymetrix also argues that its own witnesses thoroughly rebutted any notion that AlphaPet was the source of the data in the Polymetrix report.

On the record before the district court, there simply was no genuine dispute of material fact on this issue. Again, Alpek hung a huge portion of its theory on an unsupportable piece of evidence—here, a conclusory assertion by its expert. We agree with the court's analysis of the expert's imprecise attempt to correlate two sets of data. *See Summary Judgment Decision*, 2021 WL 1239894, at *6–7. We further agree with the court's recognition that the overwhelming majority of the evidence, including testimony from multiple other witnesses, demonstrated that AlphaPet was not the source of the data in the Polymetrix

report. *See id.* And, mostly, we fundamentally agree with the court that Alpek's expert's conclusion is nonsensical in view of his concession that the two sets of data "match up *almost* exactly." *See id.* at \*12 (emphasis added). If the AlphaPet test results were really the source of the data for Polymetrix's report, we can discern no reason why the two sets of data would not match up *exactly*.

## C.

Alpek's third argument is that the district court erred by failing to recognize the Swedish law implications of Polymetrix's continued ownership of the plant equipment during the commissioning period. Alpek contends that the only evidence on this point was an unrebutted declaration that Polymetrix's continued ownership makes Polymetrix "the responsible party under Swedish law." *See* Alpek Br. at 34.

Polymetrix responds that the district court properly found Alpek's Swedish law declaration to be inapposite. Polymetrix emphasizes that, notwithstanding any contractual terms agreed to by the parties, this case is governed by American patent law.

We agree with Polymetrix. This case does not involve a dispute about the interpretation of any contractual provision or a breach of the contract between Polymetrix and IVP. Rather, the question presented to the district court was whether, under American law, Alpek had sufficient evidence to create genuine disputes of material fact regarding the causation element of induced infringement. Thus, even if Alpek's Swedish law declaration is entirely accurate in its representations, no contract term can alter the elements required to prove induced infringement of the patents-in-suit.

As a matter of American law, the mere fact that Polymetrix owned the plant equipment is wholly insufficient for Alpek to meet its burden of proving that Polymetrix took

active steps to induce IVP to infringe. *See, e.g.*, *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935–36 (2005) (requiring "[e]vidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use" (internal quotations omitted)); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008) ("[L]liability for active inducement may be found 'where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement.'" (quoting *Grokster,* 545 U.S. at 935)).  We are therefore unpersuaded by Alpek's argument that the district court erred by failing to account for a Swedish law interpretation of the contract.

D.

Alpek's fourth argument is based on the court's denial of its motion to strike the Saini declaration.  Alpek relies on the language of Federal Rule of Civil Procedure 37, which states that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  According to Alpek, because it is undisputed that Polymetrix failed to disclose Mr. Saini in its initial disclosures under Rule 26(a), the court abused its discretion in allowing Polymetrix to rely on Mr. Saini's declaration in support of its motion for summary judgment.

The district court is owed broad discretion in enforcing the rules of discovery, *see Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979).  While it is important that district courts exercise their discretion to enforce the rules of discovery in a manner that minimizes unfair surprises and prejudice to either party, *see, e.g.*, *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011), there was no such surprise or prejudice here.  Mr. Saini's significance to the case was readily apparent because he was the director

of IVP and his name appeared on more than 1,000 documents produced during discovery. Under Rule 26(e), Polymetrix would only have been required to supplement its initial disclosures "if the additional or corrective information"—namely, Mr. Saini's identity, contact information, and significance to the case—"ha[d] not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e). At worst, Polymetrix's failure to disclose Mr. Saini's identity was entirely harmless. *See* Fed. R. Civ. P. 37(c). Accordingly, we find no abuse of discretion in the district court's conclusion that Alpek "cannot credibly" contend that it was unfairly surprised by Polymetrix's reliance on Mr. Saini. *See Summary Judgment Decision*, 2021 WL 1239894, at *10.

Each of Alpek's arguments fails to persuade us that the district court erred in its summary judgment analysis. Accordingly, we hold that the district court properly granted summary judgment of no inducement in favor of Polymetrix.

## II.

We turn next to Alpek's appeal of the district court's denial of its motion to amend. Alpek contends that the depositions in mid-2020 provided information that showed Polymetrix was directly responsible for importing PET into the United States. Alpek insists that it could not have amended its complaint before the October 2019 deadline because did not have enough information to support allegations of direct infringement until it discovered "critical new evidence that could not have been found earlier." *See* Alpek/DAK Br. at 50. Alpek blames Polymetrix and the affiliated Indorama Ventures companies for engaging in delay tactics throughout discovery.

Polymetrix responds that the district court did not abuse its discretion in denying Alpek's motion to amend. Polymetrix notes that Alpek's brief is silent on the issue of diligence, which is the primary measure of the good cause

required to extend the filing deadline for a motion to amend the complaint. *See* Polymetrix Br. at 51 (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008)).

Much of Alpek's argument consists of mere disagreement with the magistrate judge's view of the facts. The magistrate judge found that Alpek had sufficient information before the October 2019 deadline "at the very least, to have reasonable suspicions" that IVP had sent PET samples from its plant in Poland to the United States. *See Summary Judgment Decision*, 2021 WL 1239894, at \*9 (quoting the magistrate judge's opinion). Moreover, the magistrate judge "struggled to see" how anything that occurred during the depositions in mid-2020 "was the kind of 'lightbulb moment'" described by Alpek. *See id.*

We defer to the broad discretion of the district court to manage its own docket. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). Here, the magistrate judge denied the motion to amend, and the district court affirmed that denial, mainly because Alpek made no attempt to amend its complaint until long after the deadline. All of Alpek's arguments in this appeal were expressly considered and rejected by the magistrate judge and then again by the district judge. Alpek would have us reconsider the factual basis for its motion and reweigh all of the arguments it presented below, which we will not do. *Cf. GS CleanTech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1328 (Fed. Cir. 2020) (declining to reweigh evidence on a question reviewed for abuse of discretion). Because we find that the district court did not abuse its discretion in affirming the magistrate judge's denial of the motion to amend, we affirm that decision.

## III.

We finally turn to Alpek's motion to compel production of the opinion of counsel and related documents. Alpek argues that Polymetrix waived privilege with respect to the

opinion of counsel.  According to Alpek, the district court erred by focusing on whether Polymetrix intended to use the opinion of counsel in the litigation, but that consideration became irrelevant once the privilege was waived. Alpek insists that the opinion of counsel would have been featured in the summary judgment briefing because it could have been used to show that Polymetrix was likely to infringe the patents.  Polymetrix responds that we need not reach this issue because it has no bearing on the district court's summary judgment ruling.  For the reasons that follow, we agree with Polymetrix.

To prove induced infringement, Alpek was required to show not only that Polymetrix intended to cause, but also that Polymetrix *did in fact cause*, IVP to infringe the patents-in-suit.  *See, e.g.*, *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004) (requiring proof that the defendant "actually induced" infringement (citing *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986)).  In other words, "intent" and "causation" are two separate required elements to prove induced infringement.  An opinion of counsel, to the extent it is relevant to indirect infringement, would relate only to the intent element of inducement.  *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1352–53  (Fed. Cir. 2019) ("'[O]pinion-of-counsel evidence' is relevant to the intent analysis for induced infringement because such evidence 'may reflect whether the accused infringer "knew or should have known" that its actions would cause another to directly infringe.'" (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008))).

Here, as Polymetrix correctly points out, the court granted summary judgment of no inducement on the basis that Alpek could not present evidence "sufficient to raise a genuine dispute of material fact regarding Polymetrix's *causation* of IVP's allegedly infringing activity." *See Summary Judgment Decision*, 2021 WL 1239894, at *14 (emphasis added).  But the issue of *intent* did not factor into

the district court's grant of summary judgment. Thus, in view of our affirmance of the court's grant of summary judgment on the basis of a lack of causation, the motion to compel—which relates to the intent element of inducement—presents a moot issue that we need not decide. *See, e.g.*, *Hester Indus. v. Stein, Inc.*, 142 F.3d 1472, 1485 (Fed. Cir. 1998) (declining to decide an issue that did not bear on a district court's summary judgment ruling).

## CONCLUSION

We have considered all of Alpek's remaining arguments regarding the district court's decisions and we find them unpersuasive. Accordingly, all of the decisions of the district court are *affirmed*.

**AFFIRMED**